# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            v.

GUILLERMO AGUILA-MONTES DE
OCA,
                    *Defendant-Appellant.*

No. 05-50170

D.C. No.
CR-04-02175-RTB

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
March 25, 2010—San Francisco, California

Filed August 11, 2011

Before: Alex Kozinski, Chief Judge, Pamela Ann Rymer,
Barry G. Silverman, William A. Fletcher, Ronald M. Gould,
Marsha S. Berzon, Johnnie B. Rawlinson, Jay S. Bybee,
Consuelo M. Callahan, Milan D. Smith, Jr. and
N. Randy Smith, Circuit Judges.

Per Curiam Opinion;
Opinion by Judge Bybee;
Concurrence by Judge Berzon;
Partial Concurrence and Partial Dissent by Judge Rawlinson

## COUNSEL

Steven F. Hubachek and Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Mark R. Rehe, Assistant U.S. Attorney, Criminal Division, San Diego, California, for the plaintiff-appellee.

## OPINION

PER CURIAM:

A majority of the en banc court (Judge Bybee, joined by Judges Rymer, Silverman, Gould, Rawlinson and Callahan) overrules our prior holding in *Navarro-Lopez* v. *Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc), that the modified categorical approach doesn't apply "[w]hen the crime of conviction is missing an element of the generic crime altogether."

A different majority (Judge Bybee, joined by Chief Judge Kozinski and Judges Rymer, W. Fletcher, Berzon, M. Smith and N.R. Smith) overrules our prior decisions to the extent they hold that a conviction under California Penal Code § 459 qualifies as a generic burglary conviction if the defendant pleaded guilty to entering a building "unlawfully" or a jury found the defendant guilty as charged in an indictment recit-

ing that allegation. This majority concludes that Aguila-Montes's prior conviction under California Penal Code § 459 cannot be used to enhance his sentence.

The district court's sentence is VACATED, and the case is REMANDED to the original three-judge panel for consideration of the remaining issues raised on appeal.

---

BYBEE, Circuit Judge:

We granted rehearing in this case to reconsider the rule we adopted in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), to govern application of the modified categorical approach.

The categorical and modified categorical frameworks, first outlined by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), establish the rules by which the government may use prior state convictions to enhance certain federal sentences and to remove certain aliens. In the twenty years since *Taylor*, we have struggled to understand the contours of the Supreme Court's framework. Indeed, over the past decade, perhaps no other area of the law has demanded more of our resources. *See, e.g.*, *United States v. Strickland*, 601 F.3d 963, 967-71 (9th Cir. 2010) (en banc); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 912-13 (9th Cir. 2009) (en banc); *United States v. Snellenberger*, 548 F.3d 699, 700-02 (9th Cir. 2008) (en banc) (per curiam); *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1159-60 (9th Cir. 2008) (en banc); *United States v. Vidal*, 504 F.3d 1072, 1086-90 (9th Cir. 2007) (en banc); *Navarro-Lopez*, 503 F.3d at 1073; *United States v. Grisel*, 488 F.3d 844, 847-48, 851-52 (9th Cir. 2007) (en banc); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132-35 (9th Cir. 2006) (en banc); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211-13 (9th Cir. 2002) (en banc), *superseded by*

U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.2 cmt. n.4 (2002).

In *Navarro-Lopez*, we stated that "[t]he modified categorical approach . . . applies when the particular elements in the crime of conviction are broader than the generic crime." 503 F.3d at 1073. We then declared:

> When the crime of conviction is missing an element of the generic crime altogether, we can never find that "a jury was actually required to find all the elements of" the generic crime. *See Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004) (Kozinski, J., concurring) (providing examples).

*Id.*

Today, we conclude that *Navarro-Lopez*'s "missing element" rule is not required by the Supreme Court's modified categorical approach established in *Taylor*. We overrule that portion of *Navarro-Lopez*. Applying the modified categorical approach to this case, we nevertheless agree with the panel's determination that Defendant-Appellant Guillermo Aguila-Montes de Oca's ("Aguila") conviction under California Penal Code § 459 does not qualify as a "crime of violence" under either the categorical or modified categorical approach. Accordingly, we vacate the district court's sentence and remand to the original three-judge panel for consideration of the remaining issues Aguila raised on appeal.

I

Aguila is a native and citizen of Mexico. On July 5, 2004, Aguila attempted to enter the United States at the San Ysidro, California, point of entry. Customs officers determined by computer that Aguila had been previously deported from the United States, and arrested him. The government charged Aguila in the Southern District of California with illegal reen-

try after deportation, in violation of 8 U.S.C. § 1326. A jury convicted him, and the district court sentenced Aguila to 120 months in prison and two years of supervised release.

During sentencing, the district court determined that, in 1988, Aguila had pled guilty to first degree residential burglary, in violation of California Penal Code § 459. That statute punishes "[e]very person who enters [various structures] . . . with intent to commit grand or petit larceny or any felony." CAL. PENAL CODE § 459. Based on this prior offense, the district court enhanced Aguila's sentence under U.S.S.G. § 2L1.2, which provides a sixteen-level enhancement for defendants previously deported after "a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A). The Guidelines' Application Notes specifically define "crime of violence" to include "burglary of a dwelling." *Id.* § 2L1.2 cmt. n.1(B)(iii). The district court held that Aguila's California burglary conviction qualified as "burglary of a dwelling" and accordingly enhanced his sentence by sixteen levels.

Aguila appealed his sentence,[1] and we first affirmed the district court's sentence but then withdrew that opinion on rehearing and reversed. *See United States v. Aguila-Montes de Oca*, 523 F.3d 1071 (9th Cir. 2008) ("*Aguila I*"), *withdrawn and replaced by United States v. Aguila-Montes de Oca*, 553 F.3d 1229 (9th Cir. 2009) ("*Aguila II*"). In *Aguila I*, applying the two-part approach outlined in *Taylor*, we first held that the California burglary statute is categorically broader than the generic definition of "burglary of a dwelling" because the

---

[1]Aguila raised several other issues before the *Aguila I* panel, which were resolved against Aguila in a separate, unpublished memorandum disposition. *See United States v. Aguila-Montes de Oca*, 275 Fed. Appx. 707 (9th Cir. 2008). Because the government's Petition for Rehearing and Suggestion for Rehearing En Banc, as well as Aguila's response to that petition, discussed only the issue of the sentence enhancement, we address only that issue and leave the other issues to the original three-judge panel to be resolved following our decision here.

statute "does not require that the entry be unlawful or unprivileged." *Aguila I*, 523 F.3d at 1076 (quotation marks omitted). In a footnote, we then distinguished *Navarro-Lopez* based on the reasoning that, in Aguila's case, "both the crime of conviction and the generic crime have the same basic elements." *Id.* at 1077 n.2 (citing *People v. Davis*, 958 P.2d 1083, 1085 (Cal. 1998) (describing the elements of California's burglary offense as (1) entry, (2) into any building or other listed structure, (3) with intent to commit larceny or any felony)). Although "generic burglary also requires that the entry be unlawful or unprivileged," we stated, "[t]his d[id] not . . . create an additional element, but merely describe[d] one type of entry among many possible entries, including unprivileged, forcible and unauthorized entries." *Id.* (quotation marks omitted). Having determined that the California statute was not "missing an element" of the generic crime, *Navarro-Lopez*, 503 F.3d at 1073, we applied the modified categorical approach and concluded that because the documents of conviction, *see Shepard v. United States*, 544 U.S. 13, 16 (2005), "reveal[ed] that [Aguila's] entry was unlawful," his prior offense "satisfie[d] the generic definition of burglary of a dwelling." *Aguila I*, 523 F.3d at 1078.

One year later, we withdrew our *Aguila I* opinion in *Aguila II*, and relied entirely on *Navarro-Lopez* to reverse and remand to the district court to impose a sentence without the sixteen-level enhancement. *Aguila II*, 553 F.3d at 1234. We did not alter *Aguila I*'s analysis with respect to the categorical approach. *Compare id.* at 1233, *with Aguila I*, 523 F.3d at 1075-76. However, unlike in *Aguila I*, we determined that generic burglary requires *as an element* that the entry be "unlawful or unprivileged." *See Aguila II*, 553 F.3d at 1234 (characterizing generic burglary as requiring "(1) entry, (2) which is unlawful or unprivileged, (3) into a building or structure, (4) with intent to commit a crime"). In contrast, we noted, the California statute requires only "(1) entry, (2) into any building or other listed structure, (3) with intent to commit larceny or any felony." *Id.* We therefore held that, under

*Navarro-Lopez*, we could "not apply a modified categorical approach . . . because the state crime of which Aguila-Montes was convicted lacks an element of the generic crime of the Guidelines[,] . . . namely, that the entry must have been 'unlawful or unprivileged.' " *Id.* at 1233-34. Accordingly, we held that the district court erred in characterizing Aguila's prior offense as a "crime of violence." *Id.* at 1234.[2]

On a vote of the majority of nonrecused active judges on our court, we decided to rehear this case en banc.

## II

We first review the complex legal framework governing this case, beginning with the relevant Guidelines, the Supreme Court decisions preceding *Navarro-Lopez*, and ending with our controversial *Navarro-Lopez* decision.

## A

Section 2L1.2 of the Guidelines addresses sentencing for the crime of unlawfully entering or remaining in the United States. It provides a sixteen-level enhancement "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence . . . ." U.S.S.G. § 2L1.2(b)(1). The Guidelines' Application Notes define "crime of violence" to include "burglary of a dwelling." *Id.* § 2L1.2 cmt. n.1(B)(iii). "The sentencing judge's application of the Sentencing Guidelines, including whether a prior conviction is a 'crime of violence' . . . for the purposes of U.S.S.G. § 2L1.2, is reviewed de novo." *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005).

---

[2]Judge Gould dissented, arguing that "the application of *Navarro-Lopez* . . . to the California burglary statute here is inconsistent with the scope intended by the United States Supreme Court for its doctrine of modified categorical analysis, as outlined in *Taylor*." *Id.* (Gould, J., dissenting).

B

**[1]** To determine whether a prior conviction qualifies as a "crime of violence" under the Guidelines, we use the two-part analytical approach outlined by the Supreme Court in *Taylor*. *See United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003). In *Taylor*, the Court addressed the meaning of the word "burglary" in the Armed Career Criminal Act ("ACCA"), which provides a sentence enhancement for a defendant convicted of being a felon in possession of a firearm who "has three previous convictions by any court . . . for a violent felony," 18 U.S.C. § 924(e)(1), and defines "violent felony" to include, among other things, "burglary," *id.* § 924(e)(2)(B)(ii).

The Court determined that " 'burglary' in § 924(e) must have some uniform definition independent of the labels employed by various States' criminal codes," in order to "protect[ ] offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction." *Taylor*, 495 U.S. at 589, 592. After discussing the text and legislative history of the statute, the Court found "that Congress meant . . . 'burglary' [in] the generic sense in which the term is now used in the criminal codes of most States." *Id.* at 598. The Court held that this "generic" definition of burglary "ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599.

This determination left the Court with "the problem of applying this conclusion to cases in which the state statute under which a defendant is convicted varies from the generic definition of 'burglary' "—for example, when a state burglary statute "eliminat[es] the requirement that the entry be unlawful or . . . includ[es] places, such as automobiles and vending machines, other than buildings." *Id.* The Court "had to consider how a later court sentencing under the ACCA might tell whether a prior burglary conviction was for the generic

offense." *Shepard*, 544 U.S. at 17. At the same time, the Court was concerned that if this determination was made based on the particular facts underlying the defendant's prior conviction, the result would be a series of time-consuming "mini-sentencing-trials featuring opposing witnesses perusing lengthy transcripts of prior proceedings." *Id.* at 36 (O'Connor, J., dissenting) (citing *Taylor*, 495 U.S. at 601).

**[2]** The *Taylor* Court's solution to this problem was what it referred to as the "categorical approach," in which a court looks "not to the particular facts underlying [the defendant's prior] conviction[ ]," but "only to the fact of conviction and the statutory definition of the prior offense," in order to determine whether the state statute could potentially criminalize conduct that would not qualify as a "violent felony." *Taylor*, 495 U.S. at 600, 602; *see also Begay v. United States*, 553 U.S. 137, 141 (2008) (observing that, under the categorical approach, the offense is to be considered "generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion").

**[3]** The Court then held that "[t]his categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was *actually required* to find all the elements of generic burglary." *Taylor*, 495 U.S. at 602 (emphasis added). Under this analysis, which the Court later called a "modified categorical approach," *Nijhawan v. Holder*, 129 S.Ct. 2294, 2302 (2009), if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant," then a sentence enhancement under § 924(e) would be appropriate, *Taylor*, 495 U.S. at 602.

*Taylor* itself dealt with a conviction in a jury trial, but in *Shepard*, the Court held that *Taylor*'s framework applies to guilty pleas as well. *See Shepard*, 544 U.S. at 19. In *Shepard*,

the Court also elaborated on what documents a court may consider under the modified categorical approach in order to determine whether a guilty plea to an offense defined by a nongeneric statute "necessarily admitted elements of the generic offense." *Id.* at 26. The Court rejected the government's contention that the sentencing court may look at police reports and complaint applications to determine what a guilty plea "necessarily admitted," and held that, under the modified categorical approach, a court may look only to: (1) charging documents; (2) the terms of a written plea agreement; (3) transcripts of a plea colloquy between a judge and the defendant in which the factual basis for the plea was confirmed by the defendant; (4) jury instructions; (5) any explicit factual finding by the trial judge to which the defendant assented; and (6) some comparable judicial record of this information. *See id.* at 16, 26; *id.* at 25-26 (plurality opinion). A plurality of the Court expressed concern that "allowing a broader evidentiary enquiry" would permit the sentencing court to make "disputed finding[s] of fact," thus raising concerns under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Shepard*, 544 U.S. at 24-25. The plurality stated that these concerns "counsel[ ] us to limit the scope of judicial factfinding on the disputed generic character of a prior plea" to those documents reflecting what the jury found (including "a charging document that narrows the charge to generic limits" and jury instructions), bench trial findings and rulings, or "the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." *Id.* at 25 (plurality opinion).

The Court more recently developed the *Taylor/Shepard* framework in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), and *Johnson v. United States*, 130 S. Ct. 1265 (2010). In *Nijhawan*, the court interpreted 8 U.S.C. § 1101(a)(43)(M)(i), which identified as an aggravated felony "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 129 S. Ct. at 2297. At issue was whether the $10,000 threshold referred to an element of a fraud statute or the factual circumstances surrounding a spe-

cific fraud conviction. *Id.* at 2298. The Court held that the provision "calls for a 'circumstance-specific,' not a 'categorical,' interpretation," *id.* at 2300, and also rejected application of the modified categorical approach, holding that in determining whether a previous conviction met the $10,000 threshold, the immigration court did not need to observe the evidentiary limitations articulated in *Shepard*, *id.* at 2303. In effect, *Nijhawan* suggested that statutes like § 1101(a)(43)(M)(i) could be applied in one of three ways, depending on how the statute was interpreted: using the categorical approach or modified categorical approach to the extent the statute refers to generic crimes, and using a fact-specific approach when the statute refers to "the specific circumstances in which a crime was committed." 129 S. Ct. at 2301.

In *Johnson*, the Court confronted the question of whether a Florida battery conviction constituted a violent felony under 18 U.S.C. § 922(g)(1)(i), which encompasses "any crime punishable by imprisonment for a term exceeding one year . . . [that] has as an element the use, attempted use, or threatened use of physical force against the person of another." 130 S. Ct. at 1268. For the most part, the opinion focuses on the meaning of the term "physical force." *See id.* at 1270-73. However, the Court mentioned the modified categorical approach in response to the government's concern that the Court's narrow interpretation of "physical force" would undermine the government's ability to obtain removal based on battery convictions. *Id.* at 1273. The Court reminded the government that it could rely on the modified categorical approach in cases where "the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not." *Id.* But in such cases, a court may consult the trial record "to determine which statutory phrase was the basis for the conviction." *Id.*

We have extended the *Taylor/Shepard* framework well beyond the question of whether a state burglary conviction

qualifies as generic burglary under the ACCA. In the criminal context, we have, among other things, used the framework to determine whether other crimes qualify as a "violent felony" under the ACCA, *see, e.g.*, *United States v. Terrell*, 593 F.3d 1084, 1091 (9th Cir. 2010) (holding that sexual assault under Arizona law is a "violent felony"), and whether certain crimes qualify a defendant for a "crime of violence" enhancement under the Sentencing Guidelines, *see, e.g.*, *Wenner*, 351 F.3d at 972. We have also used the *Taylor/Shepard* framework in the immigration context to determine whether an alien is removable as a result of having been convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43), *see, e.g.*, *Rivera-Cuartas v. Holder*, 605 F.3d 699, 701-02 (9th Cir. 2010); of a crime "relating to a controlled substance" under 8 U.S.C. § 1227(a)(2)(B)(i), *see, e.g.*, *Mielewczyk v. Holder*, 575 F.3d 992, 994 (9th Cir. 2009), or of a "crime[ ] involving moral turpitude" under 8 U.S.C. § 1227(a)(2)(A)(ii), *see, e.g.*, *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163 (9th Cir. 2006). Thus, our conclusion as to precisely when the modified categorical approach may be applied will have wide repercussions beyond the limited issue in this case.

## C

Before *Navarro-Lopez*, our cases drew no distinction between different kinds of statutes in terms of when the modified categorical approach could be applied. We simply applied the categorical approach and, even if we determined that the offense of conviction was missing an element of the generic crime, we then applied the modified categorical approach without any inquiry as to whether the approach *should* be applied.[3] In *Rodriguez-Rodriguez*, for example, we

---

[3]*See, e.g.*, *United States v. Nobriga,* 474 F.3d 561, 564 (9th Cir. 2006) (per curiam) (applying the modified categorical approach to determine whether a conviction involved an intentional use of force because the statute of conviction did not require it); *Galeana-Mendoza v. Gonzales,* 465 F.3d 1054, 1060-62 (9th Cir. 2006) (applying the modified categorical

applied the modified categorical approach to the precise statute at issue in this case: California Penal Code § 459. *See* 393 F.3d at 857-58. After concluding that California's first-degree residential burglary offense does not qualify categorically as generic burglary because it "do[es] not require 'unlawful or unprivileged entry' for a burglary conviction," we applied the modified categorical approach and "conclude[d] that [defendant] was convicted of a 'burglary of a dwelling' " because he "pled guilty to 'willfully and *unlawfully* enter[ing] a building with the intent to commit theft.' " *Id.* (fourth alteration in original).

*Navarro-Lopez* overruled all of these decisions *sub silentio* and in a two-paragraph analysis. In *Navarro-Lopez*, we addressed the question of whether a conviction under Califor-

---

approach to determine whether an alien committed a "crime involving moral turpitude," even though the California battery statute lacked the necessary injury element); *Valencia v. Gonzales,* 439 F.3d 1046, 1051-55 (9th Cir. 2006) (using the modified categorical approach to determine whether statutory rape was a crime of violence, even though statutory rape under California law did not require a showing of non-consent); *Rodriguez-Rodriguez*, 393 F.3d at 857-58 (holding that a conviction for first-degree residential burglary under California Penal Code § 459 was a crime of violence even though § 459 does not require a showing of unlawful entry); *United States v. Smith,* 390 F.3d 661, 664-65 (9th Cir. 2004) (same); *United States v. Velasco-Medina,* 305 F.3d 839, 851-52 (9th Cir. 2002) (same); *United States v. Franklin*, 235 F.3d 1165, 1169-72 (9th Cir. 2000) (same); *United States v. Williams*, 47 F.3d 993, 994-95 (9th Cir. 1995) (same); *United States v. Alvarez,* 972 F.2d 1000, 1005-06 (9th Cir. 1992) (per curiam) (same); *United States v. Dunn,* 946 F.2d 615, 620 (9th Cir. 1991) (same); *United States v. Sweeten,* 933 F.2d 765, 769-70 (9th Cir. 1991) (applying the modified categorical approach to a Texas burglary statute that did not require the use or threatened use of physical force as required for a "crime of violence"), *overruled on other grounds by United States v. Grisel,* 488 F.3d 844, 851 n.5 (9th Cir. 2007); *United States v. O'Neal,* 937 F.2d 1369, 1372-74 (9th Cir. 1990) (applying the modified categorical approach to California Penal Code § 459), *abrogated on other grounds as recognized by United States v. Garcia-Cruz*, 40 F.3d 986, 988-89 (9th Cir. 1994).

nia Penal Code § 32 for accessory after the fact was a crime involving moral turpitude. *See* 503 F.3d at 1065. Most of our opinion was devoted to holding that the California offense was not categorically a crime of moral turpitude. *See id.* at 1067-73.

**[4]** Then, after noting that the next step in our analysis would normally be to apply the modified categorical approach, we announced:

> The modified categorical approach, however, only applies when the particular elements in the crime of conviction are broader than the generic crime. When the crime of conviction is *missing an element of the generic crime altogether*, we can never find that "a jury was actually required to find all the elements of" the generic crime. *See Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004) (Kozinski, J., concurring) (providing examples).

> Accessory after the fact under California Penal Code section 32 lacks an element of the generic crime— i.e., the moral turpitude, the requisite depravity. The crime of conviction can never be narrowed to conform to the generic crime because the jury is not required—as *Taylor* mandates—to find all the elements of the generic crime. Even if Navarro-Lopez had admitted to depraved acts, those admissions could not be used to modify the crime because they were not necessary for a conviction. *See Shepard*[, 544 U.S. at 24]. . . . The modified categorical approach thus cannot be used to conform Navarro-Lopez's accessory after the fact conviction to the generic definition of crimes involving moral turpitude.

*Navarro-Lopez*, 503 F.3d at 1073 (emphasis added) (footnote omitted).

III

We find good reason to question our holding in *Navarro-Lopez* with respect to the modified categorical approach. As will become evident in our analysis below, the issue of when to apply the modified categorical approach is a difficult one. Yet *Navarro-Lopez* disposed of this issue in two paragraphs with a single citation to a concurring opinion. With this sparse analysis, *Navarro-Lopez* overruled almost two decades of our jurisprudence.

Moreover, because of the manner in which *Navarro-Lopez* summarily announced its novel legal principle, we have witnessed a number of false starts and conflicting decisions within our Circuit.[4] And several judges of our court have writ-

---

[4]For example, at least one panel failed to recognize the change wrought by *Navarro-Lopez* and ignored it. *See Salazar-Luviano v. Mukasey*, 551 F.3d 857, 862-63 (9th Cir. 2008) (applying the modified categorical approach even though the crime of conviction, 18 U.S.C. § 751, did not contain two elements of an obstruction of justice charge). Other panels caught the error and made a mid-course correction. *See, e.g.*, *Aguila II*, 553 F.3d at 1233-34; *Kawashima v. Gonzales*, 503 F.3d 997, 1001-03 (9th Cir. 2007) (decided one day before *Navarro-Lopez*, using modified categorical approach to determine whether convictions under 26 U.S.C. § 7206(1) and § 7206(2) qualify as aggravated felonies because the loss to the government exceeded $10,000), *withdrawn and superseded by Kawashima v. Mukasey*, 530 F.3d 1111, 1115-16 (9th Cir. 2008) (holding that the modified categorical approach does not apply because "[t]he *Navarro-Lopez* rule, which requires that the statute of conviction must contain every element of the generic offense before we resort to the modified categorical approach, plainly applies in this setting"), *abrogated by Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), *withdrawn and superseded by Kawashima v. Holder*, 615 F.3d 1043 (9th Cir. 2010). At least one district court has simply decided to ignore *Navarro-Lopez* altogether in applying the modified categorical approach. *United States v. Ramos-Medina*, No. 08cr3418 JM, 2009 WL 399249, *4 (S.D. Cal. Feb. 18, 2009) (refusing to "find that *Navarro-Lopez* overruled earlier precedents directly addressing first degree residential burglary under [California Penal Code] § 459" because "[t]here is simply no indication that the en banc decision of *Navarro-Lopez* sought to overrule [prior precedent]").

ten separately to criticize *Navarro-Lopez. See, e.g., Aguila II*, 553 F.3d at 1234 (Gould, J., dissenting); *Aguilar-Turcios v. Holder*, 582 F.3d 1093, 1102-11 (9th Cir. 2009) (Bybee, J., dissenting); *Kawashima v. Mukasey*, 530 F.3d 1111, 1119-24 (9th Cir. 2008) (O'Scannlain, J., specially concurring), *abrogated by Nijhawan*, 129 S. Ct. 2294, *withdrawn and superseded by Kawashima v. Holder*, 615 F.3d 1043 (9th Cir. 2010).

We believe that it is time to reconsider the rule announced in *Navarro-Lopez* with the diligence appropriate for an issue of this complexity and magnitude.

IV

The purpose of the modified categorical approach is to determine whether the trier of fact " 'was actually required to find all the elements of' the generic offense" before enhancing the defendant's sentence based on a state conviction. *Shepard*, 544 U.S. at 17 (quoting *Taylor*, 495 U.S. at 602). Or, as the Supreme Court has described it, the question is whether the defendant's prior conviction " 'necessarily' rested on[ ] fact[s] identifying the [crime] as generic." *Id.* at 21 (quoting *Taylor*, 495 U.S. at 602)). Our task is to determine what these rules mean and whether, as *Navarro-Lopez* held, these rules entirely preclude the application of the modified categorical approach to certain kinds of state statutes.

[5] *Navarro-Lopez* effectively segregated state criminal statutes into two classes. First, it acknowledged that application of the modified categorical approach was permissible when a prior conviction resulted from what we will call "divisible statutes." A divisible statute contains a list of statutory phrases, at least one of which satisfies an element of a given generic crime.[5] For example, *Taylor*'s generic burglary defini-

---

[5]We note that other circuits have used the term "divisible statute" in potentially different ways. *See Lanferman v. Bd. of Immigration Appeals*,

tion requires that the defendant enter into a "building or structure." 495 U.S. at 599. We have interpreted *Taylor*'s "building or structure" element to mean "a structure designed for occupancy that is intended for use in one place." *Grisel*, 488 F.3d at 848. California Penal Code § 459, the residential burglary statute under which Aguila was convicted, contains a list of structures, at least one of which the defendant must enter in order to be convicted of burglary. Some of these structures, such as a "house," "shop," or "warehouse," satisfy *Taylor*'s "building or structure" element. However, other structures listed in the California statute, such as "floating home," "railroad car," and "trailer coach," are not "intended for use in one place," *Grisel*, 488 F.3d at 848, and therefore do not meet *Taylor*'s definition of "building or structure." Thus, California Penal Code § 459 is a "divisible statute" in the sense that it contains a list of several kinds of structures, only some of which satisfy the generic crime.

[6] *Navarro-Lopez* created a second class of state criminal statutes: those that are "missing an element of the generic crime altogether." A statute can be "missing an element of the generic crime" in two ways. In some cases, the state offense contains an element that encompasses the generic element but covers a broader range of conduct than the generic element. For example, the Guidelines' "crime of violence" definition, in addition to "burglary of a dwelling," also includes "statutory rape." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). In *United States v. Rodriguez-Guzman*, 506 F.3d 738 (9th Cir. 2007), we held that the generic definition of "statutory rape" requires that the victim be under the age of sixteen. *Id.* at 746. We then held that California Penal Code § 261.5(c), which criminalizes "an

576 F.3d 84, 90 (2d Cir. 2009) (listing "three approaches" that the Second Circuit "might adopt" to determining when a statute was divisible and noting that "the exact parameters of the divisibility inquiry have not been determined"); *see also Oouch v. U.S. Dep't of Homeland Sec.*, 633 F.3d 119, 122 (2d Cir. 2011) ("We have not yet fixed on an approach for determining when a statute is . . . divisible.").

act of unlawful sexual intercourse with a minor," with "minor" defined as "a person under the age of 18 years," CAL. PENAL CODE § 261.5(a), does not qualify categorically as "statutory rape" because it establishes eighteen rather than sixteen as the age of consent. *Rodriguez-Guzman*, 506 F.3d at 746. Thus, California Penal Code § 261.5(c) is an example of a "broad element" statute: although it contains an "age" element, that element covers a broader range of conduct (specifically, victims between the ages of sixteen and eighteen) than the generic element does.

In other cases, the criminal statute altogether lacks an element of the generic crime. For example, in *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008) (en banc), we addressed whether "any of four California statutory rape provisions . . . constitutes the aggravated felony 'sexual abuse of a minor' within the meaning of 8 U.S.C. § 1101(a)(43)." *Id.* at 1150. We defined "sexual abuse of a minor" by reference to the federal statutory rape statute, 18 U.S.C. § 2243, and held that this definition contains "four elements: (1) a mens rea level of knowingly; (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) *an age difference of at least four years between the defendant and the minor*." *Estrada-Espinoza*, 546 F.3d at 1152 (emphasis added). We found that three of the four California statutory rape offenses at issue "are missing the fourth element of the generic statute: an age difference of at least four years between the defendant and the minor," and therefore held that we could not apply the modified categorical approach to these statutes under *Navarro-Lopez. See Estrada-Espinoza*, 546 F.3d at 1159; *see also, e.g.*, CAL. PENAL CODE § 286(b)(1) ("[A]ny person who participates in an act of sodomy with another person who is under 18 years of age shall be punished . . . .").

It is worth noting that the distinction between the "broad element" and "missing element" cases is only of limited conceptual use and has no legal significance. In both situations, "the crime of conviction is missing an element of the generic

crime," precluding resort to the modified categorical approach under the *Navarro-Lopez* rule. 503 F.3d at 1073. Indeed, it is difficult, if not impossible, to conclusively determine whether a criminal statute has a broad element or is missing an element altogether. For example, if a statute of conviction punishes possession of pornography, but a federal statute imposes a sentence enhancement for possession of child pornography, the statute of conviction could be characterized either as containing the "broad" element of pornography (including both adult and child pornography) or as "missing" the element of involvement of minors. *See Aguilar-Turcios v. Holder*, 582 F.3d 1093, 1097-98 (9th Cir. 2009); *id.* at 1111-12 (Bybee, J., dissenting). To provide a second example, generic burglary requires entry into a structure with the intent to commit a crime. *Taylor*, 495 U.S. at 598. If the statute of conviction provides that burglary involves entry into a structure, but does not specify that the burglar *enter* with the intent to commit a crime, the statute of conviction is both too broad—because it permits conviction when either the burglar entered with intent to commit a crime or when he entered and subsequently developed the intent to commit a crime, *see Aguila I*, 523 F.3d at 1076 n.2—and is also arguably "missing" the element of simultaneous intent entirely, *see Aguila II*, 553 F.3d at 1234. This difficulty emphasizes the broader point we develop below: there is no way to draw a principled distinction between a statute that contains a list of elements that includes more than what the generic statute requires, and a statute that is missing the elemental phrase altogether.

To provide a consistent and convenient example to illustrate each of these scenarios, we may hypothesize the following.[6] We begin with a hypothetical federal recidivism statute that enhances a defendant's sentence if he has been previously convicted of the generic offense of "aggravated assault,"

---

[6]Two of these scenarios were identified in Judge Kozinski's concurring opinion in *Li*, which was cited favorably in *Navarro-Lopez*, *see* 503 F.3d at 1073, and we add a third scenario that we believe is appropriate.

which has two elements: (1) harmful contact and (2) the use of a gun. Imagine further that a defendant has been previously convicted of a state's "assault" offense. The state assault offense might be categorically broader than generic aggravated assault in one of three ways. If the statute is divisible, the state crime contains a *list* of several kinds of weapons, at least one of which satisfies the generic crime. Such a crime might have the following elements: (1) harmful contact and (2) use of a gun or an axe. The state offense might also include a "broad element" if it requires (1) harmful contact and (2) use of a weapon (which encompasses a broader range of conduct than use of a gun). Finally, the state crime of conviction might only require harmful contact without requiring the use of any kind of weapon at all.

We conclude that the modified categorical approach encompasses, with certain important restrictions, each of these situations.

## A

**[7]** We first examine why the modified categorical approach is appropriate for divisible statutes. There is no serious dispute that it at least applies to them. If this were not so, the modified categorical approach would have no function whatsoever. When the statute of conviction contains a list of statutory phrases, at least one of which satisfies the generic statute, the modified categorical approach can be used to determine under which statutory phrase the defendant was convicted. If the appropriate documents demonstrate that the defendant was convicted under the statutory phrase satisfying the generic element, then the trier of fact was "actually required" to find that element of the generic crime. To use our hypothetical, if the statute of conviction contains the elements of (1) harmful contact and (2) use of a gun or an axe, the modified categorical approach can be used to determine whether the trier of fact was actually required to find that the defendant used a gun.

In *Taylor*, the Supreme Court illustrated the modified categorical approach by citing a divisible statute:

> [I]n a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

495 U.S. at 602. Furthermore, the Court's recent decisions in *Johnson* and *Nijhawan* confirm that the modified categorical approach applies at least to divisible statutes. *See Johnson*, 130 S. Ct. at 1273 ("When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, . . . the 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the [judicially noticeable documents]." (citation omitted)); *Nijhawan*, 129 S. Ct. at 2303 (modified categorical approach can be used to "determin[e] which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction").

B

**[8]** We now turn to statutes that are "missing an element of the generic crime." As a conceptual matter, these statutes simply substitute a shorthand phrase for a list of acts or objects covered by that phrase. For example, a statute that requires use of a "weapon" is not meaningfully different from a statute that simply lists every kind of weapon in existence. Using the word "weapon" as an element is not analytically different from creating a list of all conceivable weapons ("gun, axe, sword, baton, slingshot, knife, machete, bat," and so on). Because we have little difficulty discerning that some-

one convicted of assault with a "weapon" may have used a gun, the modified categorical approach could apply in the same way it does to a conviction under a divisible statute to determine if the trier of fact was actually required to find that the defendant used a gun. *See Li*, 389 F.3d at 899 (Kozinski, J., concurring) ("The government may . . . use the indictment and other documents in the record to prove that, because the jury convicted the defendant [under a hypothetical statute requiring use of a weapon], it must have done so by finding that he used a gun—for instance, if that was the only way that element of the offense was charged in the indictment.").

Similar logic applies where a statute does not even require a weapon, and only requires harmful contact. If a statute of conviction only requires the element of "harmful contact," that element in turn is indistinct from a list of all the possible ways an individual can commit harmful contact ("harmful contact with a vehicle, harmful contact with a gun, harmful contact with an axe, harmful contact with a utensil" and so on). The only conceptual difference between a divisible statute and a non-divisible statute is that the former creates an *explicitly* finite list of possible means of commission, while the latter creates an *implied* list of every means of commission that otherwise fits the definition of a given crime.

**[9]** Nonetheless, under existing case law, it is not obvious that the modified categorical approach applies in these missing element cases. We conclude that it does. First, we consider the argument for limiting the modified categorical approach to the divisible statute situation, noting that there is dicta in *Nijhawan* and *Johnson* that supports this position and that several of our sister circuits have adopted some form of this argument. Second, we explain why, in our view, that argument is inconsistent with the fact that the Supreme Court in *Taylor* has approved a modified categorical approach. Finally, we find strong support for our interpretation of the modified categorical approach—and further support for our

rejection of Aguila's argument—in the reasoning behind *Taylor*.

1

The central basis for the argument that the modified categorical approach should be limited to divisible statutes is that, in order to determine whether a defendant's prior offense qualifies the defendant for a sentencing enhancement or whether an alien's prior offense renders him removable, it does not matter what acts the defendant *committed*; rather, the relevant question is what he was *convicted* of. *See Taylor*, 495 U.S. at 600 (justifying the categorical approach based on the fact that the ACCA "refers to 'a person who . . . has three previous convictions' for—not a person who has committed—three previous violent felonies or drug offenses" (alteration in original) (quoting 18 U.S.C. § 924(e)(1)); *Shepard*, 544 U.S. at 16 (clarifying what documents could be used "to determine whether an earlier guilty plea necessarily admitted, and *supported a conviction for*, generic burglary" (emphasis added)); U.S.S.G. § 2L1.2(b)(1) (imposing a sentence enhancement on defendants convicted of illegal reentry after deportation who were "deported, or unlawfully remained in the United States, after (A) a *conviction* for a felony that is . . . a crime of violence" (emphasis added)); 18 U.S.C. § 924(e)(1) (imposing a fifteen-year mandatory minimum sentence on felons in possession of a firearm who "ha[ve] three previous *convictions* . . . for a violent felony or a serious drug offense" (emphasis added)); 8 U.S.C. § 1227(a)(2)(A)(i) ("Any alien who (I) is *convicted* of a crime involving moral turpitude committed within five years . . . after the date of admission . . . is deportable." (emphasis added)). Because of this distinction between conviction and commission, under *Taylor* it does not matter what facts the jury actually found but rather what facts the jury was "actually *required* to find," 495 U.S. at 602 (emphasis added), which are the facts required to establish the defendant's conviction—that is, the facts on which the conviction

" 'necessarily' rested," *Shepard*, 544 U.S. at 21 (quoting *Taylor*, 495 U.S. at 602).

The requirement that we focus on what the defendant was convicted of rather than the acts he committed serves two important purposes. First, it confines our inquiry to the fact of conviction and avoids the need to rummage through the "actual proof at trial" to see "whether the defendant's conduct constituted generic burglary." *Taylor*, 495 U.S. at 601. It therefore avoids the spectacle of a "trial over trials," in which the government and the defendant reprise their roles, argue over what was litigated in state court, and invite the sentencing court to conduct "its own review of the record." *Id.* Second, by relying exclusively on the crime of conviction, we avoid situations where the government arguably could prove that the defendant actually committed a greater offense, one that would satisfy the generic crime, but would deprive the defendant of the benefit of his conviction for (or plea to) a lesser crime. *Id.* at 601-02 ("[I]t would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.").

Aguila, the *amici curiae*, and other proponents of *Navarro-Lopez*'s "missing element" rule argue that, if the statute of conviction lacks an element of the generic crime, the defendant was not *convicted* of the generic crime, regardless of how certain we are that the defendant actually committed the *acts composing* the generic crime. The reason, they argue, is that a defendant can only be "convicted" if the factfinder determines that each of the *elements* of the crime was satisfied. If any element of the generic crime is missing from the statute of conviction, we cannot conclude that the defendant was effectively convicted of the generic crime, and everything else is irrelevant. Put another way, to convict, the factfinder is only "actually required" to find the elements of the statute of conviction; if something is not an element, then by definition the jury is not required to find it in order to convict. And

put yet another way, a conviction only "necessarily rests" on the elements of the statute of conviction.

Returning to our hypothetical, Aguila would argue that, if the generic aggravated assault statute requires the use of a gun (the "missing element" situation) and a state statute does not, then a defendant convicted under the state statute was not convicted of generic aggravated assault even if he actually used a gun, because again, one can only be "convicted" of having committed the elements of the crime. In this situation, the jury would not be required to find that the defendant used any type of weapon in order to convict him, regardless of whether the jury actually thought that he did in fact use a gun. And in this situation, the fact that the defendant used a gun would, in some sense, not be necessary to the defendant's conviction.

2

This argument has some force and support. Indeed, the Supreme Court's own post-*Navarro-Lopez* decisions in *Nijhawan* and *Johnson* provide some support for *Navarro-Lopez*'s rule. Both cases clearly express approval for applying the modified categorical approach to convictions under divisible statutes. But neither case addressed the issue before us, so we are reluctant to read into *approval* of the use of the modified categorical approach in the divisible statute context as *disapproval* of its use with broad or missing element statutes.

The petitioner in *Nijhawan* argued that, even where a requirement under a generic crime is an attendant circumstance of the crime rather than an element of the crime, the court "should nonetheless borrow from *Taylor* what that case called a 'modified categorical approach' " and "examine only charging documents, jury instructions, and any special jury finding." *Nijhawan*, 129 S. Ct. at 2302. The Court "d[id] not agree that fairness requires the evidentiary limitations [petitioner] proposes," and reasoned that "*Taylor*, *James* [*v.*

*United States*, 550 U.S. 192 (2007)], and *Shepard* . . . developed that list [of judicially noticeable documents] for a very different purpose, namely that of determining *which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction.*" *Id.* at 2303 (emphasis added). This sentence suggests that the purpose of the modified categorical approach is to determine under which portion of a *divisible* statute the defendant was convicted. *See United States v.Woods*, 576 F.3d 400, 406 (7th Cir. 2009) ("*Nijhawan* supports our understanding that the permissible additional materials may be consulted only for the purpose of determining under which part of a divisible statute the defendant was charged.").

Judge Berzon is mistaken when she argues that "*Nijhawan* is crystal clear: The modified categorical approach is used to determine under which provision of a divisible statute a defendant was convicted." Berzon Op. at 10640. In fact, the Court declined to apply either the categorical or the modified categorical approach to the statute at issue in that case. It had no need to explicate how either method should be applied, and it is far from "crystal clear" that *Nijhawan* limited the modified categorical approach to divisible statutes. If anything, by ratifying the creation of a new "circumstance-specific" category of statutes, the Court *expanded* lower courts' authority to look beyond statutory definitions in determining whether a particular recidivist statute applied to certain prior convictions.

*Johnson* contains similar language. In that case, the Court held that Florida's divisible battery statute, which contained a subpart that permitted conviction by "[a]ctually and intentionally touch[ing] . . . another person," FLA. STAT. § 784.03(1)(a)(1), did not "ha[ve] as an element the use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), and was thus not *categorically* a "violent felony" under the ACCA. *Johnson*, 130 S. Ct. at 1274.[7] The

---

[7]This statute was divisible because it permitted conviction either by "[a]ctually and intentionally touch[ing] . . . another person" or by

Court came to this conclusion by interpreting the term "physical force" in the ACCA to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1271.

"[T]he Government assert[ed] that [the Court's] interpretation w[ould] make it more difficult to remove, pursuant to 8 U.S.C. § 1227(a)(2)(E), an alien convicted of a 'crime of domestic violence' . . . based upon battery convictions that . . . do not require the use of violent physical force." *Id.* at 1273. The Court responded:

> This exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "modified categorical approach" that we have approved permits a court to determine *which statutory phrase* was the basis for the conviction by consulting the [judicially noticeable documents].

*Id.* (emphasis added) (quotation marks and citation omitted). This language, too, could be read to suggest that the purpose of the modified categorical approach is limited to determining under which portion of a divisible statute a defendant was convicted.

Judge Berzon argues that "*Johnson* dispels any remaining doubt" that the modified categorical approach is limited to divisible statutes. Berzon Op. at 10641. Specifically, she

---

"[i]ntentionally caus[ing] bodily harm to another person." FLA. STAT. § 784.03(1)(a). The second of these subparts clearly involved "the use . . . of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), and thus satisfied the ACCA's definition of "violent felony." The first of these subparts did not. *See Johnson*, 130 S. Ct. at 1274.

argues that because the Court was trying to offer the modified categorical approach as a flexible option for the government, the Supreme Court had an incentive to state the rule as broadly as it could. In effect, because the Court did not explicitly authorize use of the modified categorical approach in the case of non-divisible statutes, Judge Berzon encourages us to draw the strong negative inference that *Johnson* clearly foreclosed such uses. However, because the statute of conviction in *Johnson was* a divisible statute that offered two different definitions of battery (neither of which met the "physical force" requirement, *see Johnson*, 130 S. Ct. at 1269), the Court had no reason to articulate a rule for cases in which a statute was not divisible in the same way.

We acknowledge that language in *Nijhawan* and *Johnson* provides support for limiting the modified categorical approach to divisible statutes. However, this language lacks conclusive weight for several reasons. First, neither opinion states explicitly that the *only* purpose of the modified categorical approach is to narrow a divisible statute to the generic definition. *See Woods*, 576 F.3d at 415-416 (Easterbrook, C.J., dissenting) (pointing out that the Supreme Court "Justices themselves have not used the word ['divisibility'] or its functional equivalent," including in *Nijhawan*, where "[t]he Supreme Court affirmed . . . without mentioning 'divisibility' " despite a dissenting opinion in the court of appeals decision below that "invoked a 'divisibility' requirement in support of [its] argument"). But more importantly, in neither of these decisions was the Supreme Court considering the issue we are considering here: to what kinds of statutes the modified categorical approach can be applied. Thus, although Judge Berzon accurately observes that the arguments in those cases were thoroughly briefed and examined by the Court, Berzon Op. at 10640ther case presented the problem at issue here. In fact, the modified categorical approach was largely irrelevant to the issues the Supreme Court was ruling on—*Nijhawan* held that the *Taylor* framework did not apply at all to the issue of whether the alien was removable, *see*

*Nijhawan*, 129 S. Ct. at 2302-03, and *Johnson* noted that its inquiry was limited to the categorical approach because "nothing in the record of [petitioner's] 2003 battery conviction permitted the District Court to conclude that it rested upon anything more than the least of [the] acts [permitted under the state statute]," 130 S. Ct. at 1269. In sum, the Court's discussions of the modified categorical approach are illustrative rather than prescriptive on the point at issue here.

3

Beyond *Nijhawan* and *Johnson*, the circuits are a bit of a jumble. Some circuits have adopted a divisible-statutes-only rule, although few have given full attention to the rule. Others have adopted ambiguous or even conflicting rules, with several reflecting the stop-and-start analysis that we have experienced. For example, the Seventh Circuit has strongly suggested that the modified categorical approach is limited to divisible statutes. In *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), the court held that a state conviction for involuntary manslaughter was not a "crime of violence" under the Guidelines because it lacked the element of criminal intent. *Id.* at 410-13. The court declined to apply the modified categorical approach to supply that element, reasoning that Supreme Court precedent "permit[s] a court to go beyond the statutory definition of the crime to consult judicial records . . . only where the statute defining the crime is divisible, which is to say where the statute creates several crimes or a single crime with several modes of commission . . . identified somehow in the statute." *Id.* at 411. The court emphasized that the modified categorical approach should not be used "to look at the particular facts underlying the defendant's conviction," but only " 'to determine whether the jury actually *convicted* the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony.' " *Id.* at 404 (quoting *United States v. Smith*, 544 F.3d 781, 786 (7th Cir. 2008)); *see also id.* at 405 ("In short, the additional materials permitted by

*Shepard* may be used only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime."); *id.* at 409 ("[T]he only thing that counts for purposes of the ACCA or the career offender Guidelines is the prior crime for which the defendant was actually convicted.").[8]

Whatever the apparent force of *Woods*, the Seventh Circuit has recently refined its course, and it is less clear that the court has converged on a divisible-statutes-only rule. In *United States v. Fife*, 624 F.3d 441 (7th Cir. 2010), the court recently applied the modified categorical approach to determine whether a conviction under an Illinois armed violence statute constituted a violent felony under the ACCA's residual clause. *Id.* at 444; *see Begay v. United States*, 553 U.S. 137 (2008). The relevant statute of conviction provided that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law," with the exception of a number of enumerated felonies such as murder and manslaughter. 720 ILL. COMP. STAT. 5/33A-2 (2007). Resisting application of the modified categorical approach to his case, Fife argued "that the statute must be considered as a whole without any subdivisions." *Fife*, 623 F.3d at 446. According to Fife, this would mean that some convictions, such as driving under the influence with a firearm in the vehicle, or filing a false tax return while possessing a gun, would categorically not qualify under the ACCA's

---

[8]Chief Judge Easterbrook, joined by Judges Posner and Tinder, dissented from the denial of rehearing en banc, arguing "that the sentencing judge should be allowed to look at the charging papers and plea colloquy in the criminal prosecution whether or not the statute is 'divisible.' " *Woods*, 576 F.3d at 414 (Easterbrook, C.J., dissenting). While acknowledging that "*Taylor* holds that federal recidivist statutes use a charge-offense rather than a real-offense approach," he found the panel's " 'divisibility' principle . . . incompatible with the Supreme Court's understanding." *Id.* at 414-15. Chief Judge Easterbrook concluded that, "instead of asking whether a state law is 'divisible,' we should ask whether the jury (or judge) necessarily found all the elements required to classify the crime as 'violent' for federal purposes." *Id.* at 415.

residual clause as "purposeful, violent, and aggressive." *Id.* at 445. The court acknowledged the "broad reach" of the Illinois statute, but held that the statute of conviction "is a divisible statute not because each subcategory is separately listed, but because by its terms it creates several crimes or a single crime with several modes of commission." *Id.* at 444, 446. The court went on to observe that "the armed violence offense creates multiple modes of commission, defined by the felony committed while armed with a dangerous weapon," and that the court was free to "examine underlying documents to determine the precise offense committed—specifically, to determine which felony Fife committed while possessing a weapon." *Id.* at 446-47. Although the Seventh Circuit in *Fife* nominally retained the rule that the modified categorical approach only applied to divisible statutes, in our terminology it defined "divisible statute" in a manner that would encompass missing element statutes, including any statute that "necessarily establishes multiple modes of commission of the crime." *Id.* at 446.

Four other circuits — the First,[9] Fourth,[10] Fifth,[11]

---

[9]*See United States v. Giggey*, 551 F.3d 27, 40 (1st Cir. 2008) ("Under the categorical approach, a federal sentencing court may not create a series of federal subcategorizations to fit the facts of a particular case. . . . If the state statute does not contain such . . . distinction[s], the federal court may not create one.").

[10]*See United States v. Rivers*, 595 F.3d 558, 562-63 (4th Cir. 2010) (declining to apply the modified categorical approach to determine whether a state conviction for failure to stop for a blue light contained the element of criminal intent so as to render it a "violent felony" under the ACCA).

[11]*See, e.g.*, *United States v. Lipscomb*, 619 F.3d 474, 491-492 (5th Cir. 2010) (limiting the modified categorical approach to cases involving "a statutory provision that covers several different generic crimes"); *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297-98 (5th Cir. 2008) (holding that the modified categorical approach is used "only to determine of which subsection of a statute a defendant was convicted" where "the statute of conviction contains a series of disjunctive elements" (quotation marks omitted)).

and Eighth[12] — have limited the modified categorical approach to the divisible statute situation, but without much explanation as to precisely why this limitation is compelled by *Taylor* and *Shepard*. The Sixth[13] and

---

[12]*See United States v. Boaz*, 558 F.3d 800, 807-08 (8th Cir. 2009) ("Neither we nor the Supreme Court have approved a methodology that would decouple the limited review of record materials from an element-by-element analysis of the predicate offense. In other words, [the modified categorical approach may be used] *only* to determine which part of the statute the defendant violated." (quotation marks and citations omitted)).

[13]*See United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006) (stating that the court applies the modified categorical approach "[i]f the statutory definition embraces both violent and non-violent crimes *or is otherwise ambiguous*," and applying the modified categorical approach where a Tennessee child abuse statute "d[id] not necessarily require the use, attempted use, or threatened use of physical force, and, moreover, provide[d] an insufficient basis upon which to determine whether a prior conviction . . . involve[d] conduct that presents a serious potential risk of physical injury to another" (emphasis added) (quotation marks omitted) (alteration in original))

Judge Berzon cites *United States v. Young*, 580 F.3d 373 (6th Cir. 2009), and *United States v. Bartee*, 529 F.3d 307 (6th Cir. 2008), for the proposition that the Sixth Circuit is a divisible statute-only jurisdiction. Berzon Op. at 10646 & n.6. We do not think those cases go so far. *Young* criticized a prior case, *United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006) for "remand[ing] for examination of *Shepard* documents." 580 F.3d at 380 n.8. But as a concurring judge notes, the remand was inappropriate in that case because *none* of the divisible offenses were crimes of violence. *Id.* at 385 (Sutton, J., concurring in part, dissenting in part, and concurring in the judgment) ("[I]n this setting, a remand suggests that we are asking the district court to do something that *Taylor* prohibits: engaging in a fact specific inquiry about how *this defendant* committed *this offense*."). *Bartee* is also not helpful in ascertaining the current state of play in the Sixth Circuit. In that case "the government acknowledged at sentencing that neither the statuory definition nor the amended information specified that the sexual contact was with a minor." 529 F.3d at 361. The only proof that the victim was a minor came from "[non-]*Shepard*-eligible records." *Id.*

Tenth[14] Circuits appear to apply the modified categorical

---

[14]*See United States v. Townley*, 472 F.3d 1267, 1277 (10th Cir. 2007) (noting that *Shepard* "was concerned . . . with what documents can be used to prove the *facts underlying a conviction* where the elements of the state crime do not precisely mirror the federal definition" (quotation marks omitted)); *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108-09 (10th Cir. 2006) (using the modified categorical approach to determine that a conviction for the state crime of "contributing to the delinquency of a minor," which could encompass urging the minor to commit "anything from jaywalking to murder," was sexual abuse of a minor, and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(A), because it was based on a charge that the alien induced, aided, and encouraged a child to engage in non-consensual sexual conduct).

Judge Berzon argues that the Tenth Circuit adopted a divisible-statute-only rule in *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009), and *United States v. Zuniga-Soto*, 527 F.3d 1110, 1121 (10th Cir. 2008). Berzon Op. at 10644-45 & n.5. *Charles* addressed the question of whether a prior conviction for escaping from lawful custody constituted a "crime of violence" under the Sentencing Guidelines in light of the Supreme Court's decision in *Chambers v. United States*, 129 S. Ct. 687 (2009). The court acknowledged that the modified categorical approach "does not involve a subjective inquiry into the facts of the case," *id.* at 1067, but it did not comment on whether it could be applied to non-divisible statutes. In fact, the statute at issue, 18 U.S.C. § 751(a), is arguably a non-divisible statute — the court cited language describing it as "overinclusive" — yet rather than specifying that the modified categorical approach did not apply, the court remanded the case back to the district court "to determine whether or not this conviction was a career-offender-qualifying escape from custody." *Id.* at 1069 (internal quotation marks and citations omitted).

Judge Berzon also mischaracterizes *Zuniga-Soto*. It is true that the Tenth Circuit in that case corrected an intra-circuit split that resulted in cases that were "not always focused on the elements of the prior conviction." 527 F.3d at 1121. However, the court in *Zuniga-Soto* was determining the applicability of the Sentencing Guidelines' residual clause, which defines a "[c]rime of violence" to include "any other offense . . . that has *as an element* the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. 1(B)(iii) (emphasis added); *see Zuniga-Soto*, 527 F.3d at 1118. In fact, the court was careful to note that "[w]hile Comment 1(B)(iii)'s 'as an element' language does not allow for judicial analysis of the facts underlying a defendant's con-

approach whenever the offense of conviction is categorically broader than the generic crime. And the Second,[15] Third,[16] and

viction, *other enhancement provisions do.*" *Id.* at 1120 n.2 (emphasis added). In other words, *Zuniga-Soto*'s divisible-statute-only rule applies only to statutes that *explicitly* require exclusive reliance on statutory phrases. The court, in fact, reaffirmed its prior conclusion (one that is notably broader than the one we reach today) that "when the language of the enhancement provision requires courts to look at the specific facts underlying the prior offense, courts employ *a factual approach*, looking not only at the terms of the statute of conviction, but also at the underlying facts." *Id.* (quoting *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1087 (10th Cir. 2005)) (emphasis added) (alteration and quotation marks omitted).

[15]Although Judge Berzon's claim that the Second Circuit, by its terms, appears to restrict application of the modified categorical approach to "divisible statutes," Berzon Op. at 10648-49 , is correct, several cases have suggested that court uses the term "divisible statute" in a manner that might encompass missing element statutes. *See, e.g.*, *Lanferman v. Board of Immigration Appeals*, 576 F.3d 84, 91-92 (2d Cir. 2009) (suggesting that its case law might "permit divisibility in 'all statutes of conviction . . . regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct' " (internal citation omitted)); *Hoodho v. Holder*, 558 F.3d 184, 189 n.3 (2d Cir. 2009) ("We note that it is an open question whether a statute is divisible and therefore susceptible to the modified categorical approach when it encompasses both removable and non-removable offenses, but does not describe the removable offenses only in distinct subsections or elements of a disjunctive list."). Indeed, the court has recently noted that it "ha[s] not yet fixed on an approach for determining when a statute is . . . divisible." *Oouch v. U.S. Dep't of Homeland Sec.*, 633 F.3d 119, 122 (2d Cir. 2011).

[16]There is tension between two of the Third Circuit's cases. In *Knapik v. Ashcroft*, 384 F.3d 84 (3d Cir. 2004), the court stated that the modified categorical approach may be applied beyond the divisible statute situation, including in the missing element situation. *Id.* at 92 n.8 (3d Cir. 2004) (noting "two situations in which the formal categorical approach properly may be abandoned": (1) "when the terms of the statute on which removal is based invites inquiry into the facts of the underlying conviction," including when "the relevant criminal statute did not include a 'loss greater than $10,000' *element*"; and (2) "when the underlying criminal statute is written in the disjunctive . . . such that some, but not all, convic-

Eleventh[17] circuits have been ambiguous about their approach.

4

Although we acknowledge that Aguila's argument has support, we are not persuaded by it. In the end, we believe that this argument is inconsistent with the Supreme Court's man-

---

tions under the statute place the alien within the removal category for immigration purposes" (emphasis added)). However, a later decision of the Third Circuit, *Jean-Louis v. Attorney General of the United States*, 582 F.3d 462 (3d Cir. 2009), contains some language suggesting that the modified categorical approach cannot be applied to "missing element" statutes:

> [W]e depart[ ] from a strict categorical analysis only where the statute of conviction feature[s] *disjunctive variations*, some of which were sufficient for conviction of the federal offense and others of which were not. We depart farther from the formal categorical approach only where the language of a particular subsection [of a statute] . . . invites inquiry into the underlying facts of the case. In such a case, we modified the approach, but our inquiry remained a limited one, focused on the crime of conviction: we reviewed only the record of conviction to ascertain the *particular variation* of the statute under which the defendant was convicted.

*Id.* at 471-72 (emphases added) (quotation marks and citation omitted) (alteration in original); *see also id.* at 474 (inquiry must be focused "on the *crime* of which the alien was *convicted*—not the specific *acts* that the alien may have *committed*"). Adding to our confusion, Jean-Louis cites *Knapik* favorably. 582 F.3d at 465.

[17]The Eleventh Circuit has also adopted language favoring a divisible-statute-only rule without specifying whether the modified categorical approach is limited to divisible statutes. *See, e.g.*, *Obasohan v. U.S. Att'y Gen.*, 479 F.3d 785, 788 (11th Cir. 2007) ("If the statutory language contains some offenses that would qualify as aggravated felonies, and others that would not, then the statute is 'divisible,' and the IJ must look to the record of conviction . . . to determine the offense of which the respondent was convicted." (internal quotation marks omitted)); *United States v. Garcia*, 606 F.3d 1317 (11th Cir. 2010) ("[W]hen the law under which a defendant has been convicted contains different statutory phrases—some of which require the use of force and some of which do not—the judgment is ambiguous and we apply a 'modified categorical approach.' ").

date in *Taylor* that we apply a modified categorical approach that considers to some degree the factual basis for the defendant's conviction—as determined by looking at the limited universe of *Shepard* documents—in order to determine what the jury must have found.

Aguila's argument interprets the concepts of "actually required" and "necessarily rested" in *Taylor* and *Shepard* to mean "actually required" and "necessarily rested" in a strictly elemental sense—that is, a prosecutor must be "actually required" to prove the generic elements in every case brought under the state statute so that a jury's finding must have "necessarily rested" on that element in every trial brought under the provision. For example, if the generic crime requires use of a gun and the state crime requires no weapon at all, then the factfinder is not always required to find that the defendant used a gun. As a consequence, according to Aguila and Judge Berzon, the modified categorical approach can never demonstrate that the factfinder was "actually required," as a formal matter, to find a non-elemental fact.

The problem with this framework is that if we follow its logic, the modified categorical approach should not apply to *divisible* statutes, leaving no room for a modified approach at all. Even in the divisible statute situation, the factfinder is never "actually required" by the statute alone to find the *precise elements* of the generic crime.[18] To use our example

---

[18]Judge Berzon argues that the modified categorical approach can only be applied when the statute of conviction is divisible. But her confidence in the divisible-statute-only rule really turns on the reliability of the relevant *Shepard* documents. We are puzzled both by some misdirection in her analysis and by her failure to explain why this confidence is not equally applicable to other kinds of statutes. For example, Judge Berzon observes that prosecutors are required to specify under what statutory provision a defendant is being charged and must only pursue this theory "absent a formal amendment to the charging document," Berzon Op. at 10671; but elsewhere she states that "a charging document may, but may not, outline the prosecution's theory," *id.* at 10660. Judge Berzon also

above, suppose that the generic aggravated assault statute has the elements of (1) harmful contact and (2) the use of a gun, while a state statute of conviction has the elements of (1) harmful contact and (2) the use of a gun or an axe. Without examining additional documents and conducting some inquiry into the specific circumstances surrounding a conviction, it will never be possible to conclude that the conviction "necessarily rested" on the fact that the defendant used a gun. In theory, all the jury has to decide is whether the defendant used a gun or an axe, and the use of an axe in an assault is not covered by our hypothetical generic aggravated assault statute. The conclusion that the prior conviction involved the use of a gun can only be reached *after* looking at the relevant *Shepard* documents.

In other words, Aguila's reading of "actually required" collapses the modified categorical approach into the *categorical* approach, because the only time that the factfinder in the state case is "actually required" to find a particular generic element in that way is when conviction under the state statute *always* satisfies the generic statutory definition regardless of the particular facts of the case, either because the state statute matches the generic crime or because the state statute crimi-

_____

notes that judges are required to craft jury instructions "in light of the charges and the proof at trial," presumably suggesting that these instructions will require a jury to find guilt only if the specific theory advanced by the charging document has been proven, Berzon Op. at 10676; but elsewhere she states that "juries are generally free to disagree as to *means* by which the defendant committed a particular element," *id.* at 10654.

In any event, the same reasons that motivate Judge Berzon to express confidence in the modified categorical approach in divisible statute cases suggest that we should have similar confidence in applying it to broad and missing element cases, so long as we are relying on the documents approved in *Shepard*. It is unclear why, according to Judge Berzon, these conviction records are unreliable when the conviction rests on a missing element statute, yet are perfectly reliable in determining under which part of *a divisible statute a defendant was convicted.*

nalizes a narrower range of conduct than the generic crime. Thus, in order to preserve any role for the modified categorical approach, "actually required" cannot mean "actually required by specific words in the statute of conviction."

Because applying the modified categorical approach permits some consideration of the particular acts the defendant committed, *Taylor* requires a modest, but more nuanced inquiry. The modified categorical approach simply asks, in the course of finding that the defendant violated the statute of conviction, was the factfinder *actually required to find the facts satisfying* the elements of the generic offense? In other words, the purpose of the modified categorical approach is to determine (1) what facts the state conviction necessarily rested on and (2) whether these facts satisfy the elements of the generic offense. *See Shepard*, 544 U.S. at 21 (modified categorical approach indicates "whether the plea had necessarily rested on the *fact identifying* the burglary as generic" (emphasis added) (quotation marks omitted)).

For example, regarding our gun/axe divisible statute, as we understand *Taylor*, if the indictment alleges only that the defendant used a gun, and the only prosecutorial theory of the case (as ascertained exclusively through the relevant *Shepard* documents) is that the defendant used a gun, then we can be confident that if the jury convicted the defendant, the jury found that the defendant used a gun rather than an axe. In such an instance, we would say that, given the facts put forward by the government, the jury was "required" to find that the defendant used a gun. And in the plea context, if the only weapon the defendant admitted to using was a gun, then we can be confident that the trier of fact was "required" to find that the defendant used a gun in the course of assaulting the victim. In other words, the modified categorical approach asks what facts the conviction "necessarily rested" on in light of the theory of the case as revealed in the relevant *Shepard* documents, and whether these facts satisfy the elements of the generic offense.

Under such an approach, we are confident of the facts that fill the gap between a divisible statute of conviction and the generic statute because we have limited our review of the record to "only a restricted look beyond the record of conviction under a nongeneric statute." *Shepard*, 544 U.S. at 23. We avoid "evidentiary disputes" by relying only on documents that give us the "certainty of a generic finding," *id.* at 23 n.4, 24 (plurality opinion), including "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16; *see also Snellenberger*, 548 F.3d at 701-02 (holding than this list is illustrative and adding a clerk's minute order to the list). In other words, we think that *Shepard* adequately addresses the claim that *Taylor* permits only a narrowly limited inquiry into the facts. We may inquire into the facts necessary to a conviction only to the extent they are discernable from the limited set of documents approved in *Shepard*. But we need not ignore such facts when they are available in those documents.

Once we acknowledge that "actually required" means something like "actually required in light of the facts the defendant admitted" or "actually required in light of the facts referred to in jury instructions," there is little logical difference between divisible statutes and missing-element statutes in terms of when the modified categorical approach may appropriately be applied. In both cases, courts must rely on the same set of documents reflecting the facts necessarily found by the trier of fact in support of the conviction; they cannot look to any different documents or facts when considering a conviction under a missing-element statute than they would when reviewing a conviction under a divisible element statute. If the defendant could not have been convicted of the offense of conviction *unless* the trier of fact found the facts that satisfy the elements of the generic crime, then the fact-finder necessarily found the elements of the generic crime. Consider again our example of the situation in which the generic aggravated assault offense requires (1) harmful con-

tact and (2) the use of a gun, whereas the statute of conviction requires only harmful contact. If the *Shepard* documents establish that the factfinder necessarily found that the defendant satisfied the "harmful contact" element by inflicting harmful contact with a gun, then the conviction "necessarily rested" on this fact. Take, for example, an indictment alleging that the defendant used a gun to inflict harmful contact on a victim from 200 feet away. Or, perhaps the defendant admitted in a guilty plea to shooting the victim. Either way, the factfinder was actually required to find the facts that satisfy the elements of generic aggravated assault, which is all that *Taylor* requires.

[10]  There is an important limitation on our analysis of the modified categorical approach. Although we have concluded that a missing-element statute can be examined under the modified categorical approach, a court must exercise caution in determining what facts a conviction "necessarily rested" on. It is not enough that an indictment merely allege a certain fact or that the defendant admit to a fact; the fact must be *necessary* to convicting that defendant.

This limitation is important not just because of *Taylor* and *Shepard* but because of an important fairness concern raised by Judge Kozinski in his *Li* concurrence. In *Li*, he argued that applying the modified categorical approach to the missing element situation is "unfair to defendants because it denies them notice and a reasonable opportunity to rebut the charges against them." 389 F.3d at 900 (Kozinski, J., concurring); *see also* Berzon Op. at 10656-59. Where a particular fact is not an element of the statute of conviction, he argued, the defendant "ha[s] no reason to believe it w[ill] be relevant to his conviction, and thus no reason to cast doubt on the government's evidence as to [that fact]." *Li*, 389 F.3d at 900 (Kozinski, J., concurring). Even if the defendant "ha[s] overwhelming evidence" contradicting the government's assertion as to the non-elemental fact, "presenting it to the jury would [be] a waste of time and probably excluded as

irrelevant," since the non-elemental fact is "not an element of the offense for which he [i]s being tried." *Id.*

Our circumscribed interpretation of the modified categorical approach addresses this concern. If indeed a fact was necessary to the defendant's conviction, then the defendant certainly has the incentive to contest that fact, even if that fact is not separately listed as a statutory element of the crime. Let us return to our example in which the generic aggravated assault offense requires (1) harmful contact and (2) use of a gun, whereas the statute of conviction requires only harmful contact. Under our reading of the modified categorical approach, if the *Shepard* documents establish that the defendant satisfied the "harmful contact" element by inflicting harmful contact with a gun, then the factfinder was "actually required" to find that the defendant used a gun, and the conviction "necessarily rested" on this fact. In such a situation, the defendant has every incentive to demonstrate that he did not use a gun. If the defendant is successful in this showing, he will have successfully refuted the only theory that the government put forward regarding how he committed the harmful contact, and the jury will acquit him. On the other hand, if the jury convicts the defendant, then we may be confident that the jury determined that he used a gun, because such a determination was necessary given the government's theory of guilt. Once again, the fact that we may only rely on a narrow and defined range of documents—the indictment, jury instructions, judicial findings, plea agreements, plea colloquies, and the like—ensures that the defendant will have understood and had an opportunity to contest all facts which are necessary to his conviction.

Although our holding today is an expansion of the modified categorical approach relative to *Navarro-Lopez*, our interpretation of the modified categorical approach contains important limitations to ensure that it remains a narrow exception to the categorical approach. *See Taylor*, 495 U.S. at 602 ("Th[e] categorical approach . . . may permit the sentencing court to go

beyond the mere fact of conviction in a *narrow range of cases* where a jury was actually required to find all the elements of generic burglary." (emphasis added)).

5

Our interpretation of the modified categorical approach finds strong support in the uniformity principle underlying *Taylor*. In finding that " 'burglary' . . . must have some uniform definition independent of the labels employed by the various States' criminal codes," the *Taylor* Court reasoned that Congress's intent in enacting the ACCA was to "protect[ ] offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction." 495 U.S. at 589, 592; *see also* 28 U.S.C. § 991(b)(1)(B) (purpose of establishing the United States Sentencing Commission was to "avoid[ ] unwanted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct"). If the meaning of "burglary" "depend[ed] on the definition adopted by the State of conviction," then "a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.' " *Taylor*, 495 U.S. at 590-91. The Court pointed to the statute at issue in Aguila's case—California Penal Code § 459—and found it unreasonable that "a person imprudent enough to shoplift or steal from an automobile in California would be found . . . to have committed a burglary constituting a 'violent felony' for enhancement purposes—yet a person who did so in Michigan might not." *Id.* at 591.

Yet this California-Michigan dilemma is precisely the result produced by *Navarro-Lopez*'s "missing element" rule. Under that restrictive rule, if the offense of conviction lacks an element of the generic crime, a court may never look beyond the terms of the statute to determine the factual basis for a defendant's conviction, even if the defendant specifi-

cally admits to facts that would satisfy the generic definition. This rule means that certain state crimes can *never* be used for enhancement or removability purposes. For example, because California Penal Code § 459 arguably lacks the element of unlawful or unprivileged entry, under *Navarro-Lopez*'s rule, a person who violates this statute will *never* be considered to have been convicted of generic burglary, regardless of what he did or what he admitted to.[19] *See Aguila II*, 553 F.3d at 1234 ("Even if we were to undertake a modified categorical approach, we could not narrow the California statute by amending it to include the restrictive elements of the Guidelines' generic offense—namely, that the entry must have been 'unlawful or unprivileged.' "). In other words, under *Navarro-Lopez*, burglary in California is, *categorically*, not generic burglary, and thus no one convicted of burglary in our nation's most populous state is eligible for a sentence enhancement for having committed a "crime of violence." And in our circuit, the problem is not unique to California. *See Aguilar-Turcios*, 582 F.3d at 1104-05 (Bybee, J., dissenting) (observing that three of the nine states in the Ninth Circuit — California, Idaho, and Nevada — lack the unlawful entry requirement and that burglary convictions in these states would not qualify for enhancement under *Navarro-Lopez*).

By contrast, a person who commits the exact same offense in a state whose burglary statute happens to require proof of unlawful entry—say, Michigan—is subject to a sentence

---

[19]Ironically, had California chosen to include the phrase "entry, whether in a lawful or unlawful manner" to its definition of burglary—a nearly meaningless change—then the statute would be divisible and the modified categorical approach would clearly be applicable. The fact that California chose not to include words that indicated *the only two possible types of entry into a building* is the only reason that Judge Berzon believes we should not apply the modified categorical approach. Such a principle makes a defendant subject to a sentence enhancement turn entirely on the location in which he committed the prior offense, the precise outcome that *Taylor* sought to avoid in establishing a uniform definition of burglary. *See* 495 U.S. at 590-91.

enhancement. The Court's concern in *Taylor* with one kind of formalism, in which every criminal act a state denominates as a "burglary" counts (even when it shouldn't), was not meant to create a different kind of formalism, in which no criminal act a state denominates as a "burglary" counts (even when it should).

Our concern is thus both practical and pervasive. The process of mapping a generic federal definition onto state crimes —defined variously by a combination of common law definitions, model penal codes, statutes, and judicial exposition— has exposed the diversity of legal thought among state legislatures and courts. *See Woods*, 576 F.3d at 413 (Easterbrook, C.J., dissenting) ("It may be easy to tell when a person's *conduct* was violent and aggressive, but whether a crime of conviction entails such conduct can be tricky, because it is necessary to think through the many varieties of behavior within a law's domain. States did not write their statutes with *Begay* in mind.").[20] Our approach avoids the excesses of either kind of formalism. No system that requires us to map a generic statute to a state statute will yield perfectly uniform results, but the flexibility of the modified categorical approach enables sentencing judges to come closer to satisfying the ideal of equal treatment of state convictions.

\* \* \* \* \*

**[11]** In sum, *Navarro-Lopez*'s "missing element" rule is overruled, as are any subsequent cases to the extent that they relied on that rule and are inconsistent with the revised modi-

---

[20]Contrary to Judge Berzon's suggestion, the states have no incentive "to amend their criminal codes to better match the generic definitions contained in the federal recidivist statutes." Berzon Op. at 10680. But this is not a problem of their creation. It is a problem created by our efforts to understand how Congress intended federal sentences to account for prior state convictions. Federal recidivism statutes may or may not be good policy, but we have an obligation to try to enforce this policy as even-handedly as possible.

fied categorical approach discussed here. In any case requiring the application of *Taylor*'s categorical approach, in the event that we determine that the statute under which the defendant or alien was previously convicted is categorically broader than the generic offense, we may apply the modified categorical approach. Under the modified categorical approach, we determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense.

We turn now to Aguila's particular case.

## V

In 1988, Aguila was convicted of first-degree residential burglary under California Penal Code § 459, which punishes "[e]very person who enters [various structures] . . . with intent to commit grand or petit larceny or any felony." Following Aguila's 2004 conviction for illegal reentry after deportation, in violation of 8 U.S.C. § 1326, the district court enhanced Aguila's sentence under U.S.S.G. § 2L1.2(b)(1)(A), holding that his prior burglary conviction qualified as "burglary of a dwelling" and therefore a "crime of violence" under the Guidelines. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Aguila argues that his 1988 conviction does not qualify as a "burglary of a dwelling" under either *Taylor*'s categorical or modified categorical approach because California Penal Code § 459 lacks the element of "unlawful or unprivileged entry."[21] We address the categorical and modified categorical approaches in turn.

---

[21]Aguila made two other arguments for why the California statute is categorically broader than generic burglary: (1) the California statute covers structures not covered by the generic definition of "building or structure," *see Grisel*, 488 F.3d at 848; and (2) the state offense includes broader aiding and abetting liability than its generic counterpart, *see Aguila I*, 523 F.3d at 1075. Because we hold that Aguila's prior conviction fails to satisfy the generic element of "unlawful or unprivileged" entry under either the categorical or modified categorical approach, we need not address these arguments.

## A

We have consistently held that California Penal Code § 459 is categorically broader than generic burglary because it contains no requirement of "unlawful or unprivileged entry." *See, e.g.*, *Rodriguez-Rodriguez*, 393 F.3d at 857; *Velasco-Medina*, 305 F.3d at 851; *O'Neal*, 937 F.2d at 1373, *abrogated on other grounds by statute as recognized by Garcia-Cruz*, 40 F.3d at 988-89; *see also Taylor*, 495 U.S. at 599 (holding that generic burglary "ha[s] the basic elements of *unlawful or unprivileged entry* into, or remaining in, a building or structure, with intent to commit a crime" (emphasis added)).[22] However, none of our cases have grappled with an unusual aspect of California's "burglary" definition and with an

---

[22]Judge Rawlinson suggests that *Taylor*'s generic definition of burglary actually lacks the element of unlawful or unprivileged entry altogether, arguing that "[i]nclusion of the words 'or remaining in' signifies that the Supreme Court did not interpret the generic federal crime of burglary as necessarily requiring that the initial entry be unlawful or unprivileged." Rawlinson Op. at 10692. Indeed, the Court in *Taylor* did describe the generic crime of burglary as involving "basic elements" of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599. But this language does not support Judge Rawlinson's interpretation. We think the proper reading of this description would suggest that the words "unlawful or unprivileged" apply with equal force to the acts of "entry into" a building and "remaining in" a building. In other words, a person can commit burglary under this definition even if he enters a structure lawfully, subsequently loses his right to remain in that structure, and opts to remain in the structure while forming a felonious intent. This reading is supported by other language in the *Taylor* opinion. *See* 495 U.S. at 599 ("A few States' burglary statutes . . . define burglary more broadly, *e.g., by eliminating the requirement that the entry be unlawful*." (emphasis added)); *see also United States v. Schmidt*, 623 F.3d 257, 262 (5th Cir. 2010) ("[T]he generic definition of burglary always requires an element of unlawful or unprivileged entry or presence."). Ignoring the words "unlawful or unprivileged," as Judge Rawlinson would do in the context of a conviction for "remaining in" a building, renders the words "unlawful or unprivileged" utterly superfluous, since a conviction would qualify as a conviction for generic burglary any time it alleged that the defendant was merely present in a building or structure with felonious intent.

ambiguous aspect of the meaning of "unlawful or unprivileged entry" under *Taylor*. *See Snellenberger*, 548 F.3d at 704-08 (M. Smith, J., dissenting). Because these issues are crucial to our holding with respect to the modified categorical approach, we find it necessary to address them here.

On its face, California Penal Code § 459 does not require that the entry be "unlawful or unprivileged," punishing a person who merely "enters" a structure "with intent to commit grand or petit larceny or any felony." However, in a sense, California case law does in fact require "unlawful or unprivileged" entry. The seminal case on this issue is *People v. Barry*, 29 P. 1026 (Cal. 1892), in which an appellant who had been convicted of burglarizing a grocery store

> contend[ed] that a grocery store, during business hours, is a public place, and the defendant, as one of the public, had a legal right to be there, or rather to enter there; that the proprietors were doing business with the general public; the public were invited to enter; that therefore the defendant entered under an invitation of the owners, and that, consequently, *his entry was lawful, and there can be no burglary when there is a lawful entry*.

*Id.* at 1026-27 (emphasis added). The California Supreme Court rejected the appellant's proposition *that his entry was lawful*, stating: "To this reasoning, we can only say a party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled, to enter." *Id.* at 1027. In other words, when a person enters a place that is generally open to the public with the intent to commit a felony, the place is essentially not "public" as to that person, and that person has entered *unlawfully*.

The court elaborated on this concept in *People v. Gauze*, 542 P.2d 1365 (Cal. 1975). While noting *Barry*'s holding "that trespassory entry was no longer a necessary element of

burglary" under California law, the court stated that "*Barry* and its progeny should not be read . . . to hold that a defendant's right to enter the premises is irrelevant." *Id.* at 1367. Rather, "[a] burglary remains an entry which invades a possessory right in a building." *Id.* at 1367. Regarding the case at hand, the court held

> that defendant cannot be guilty of burglarizing his own home. His entry into the apartment, even for a felonious purpose, invaded no possessory right of habitation; only the entry of an intruder could have done so. More importantly defendant had an absolute right to enter the apartment. This right, unlike that of the store thief in *Barry*, did not derive from an implied invitation to the public to enter for legal purposes. It was a personal right that could not be conditioned on the consent of defendant's roommates. *Id.*

Finally, the court sharply limited *Gauze*'s holding in *People v. Frye*, 959 P.2d 183 (Cal. 1998), *overruled on other grounds by People v. Doolin*, 198 P.3d 11 (Cal. 2009). In *Frye*, the court upheld the conviction of a defendant who had committed burglary after entering a person's cabin "at the personal invitation of" a resident of the cabin. *Id.* at 212. The court rejected the defendant's argument that he could not be convicted of burglary because his entry was lawful, finding this argument to be "based on the erroneous premise that a burglary has not occurred if a person enters a building with the owner's express consent." *Id.* The court held that "[a]ny person who enters a house or building with the intent to commit a felony or theft is guilty of burglary[,] . . . even if he enters with the owner's or occupant's consent." *Id.* The court construed *Gauze* to mean "that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter." *Id.* at 213 (quotation marks omitted). The case at hand was distinguishable from *Gauze*, the court decided, because "[a]lthough the

evidence show[ed] defendant was invited into the [owners']
cabin[,] . . . there [wa]s no evidence from which to reasonably
infer defendant had an unconditional possessory right to
enter." *Id.*

These cases demonstrate that it is not so much that Califor-
nia burglary law *lacks* the requirement of unlawful or unprivi-
leged entry; it simply contains a nuanced definition of
"unlawful or unprivileged" different from the common law
definition. Importantly, *Barry*, *Gauze*, and *Frye* all require
that a defendant form his felonious intent *prior* to entering the
structure. The nuance comes in where a defendant enters the
structure with some kind of (at least nominal) permission. In
these kinds of situations, California cases hold that whether
the defendant may be convicted of burglary depends on
whether the defendant has an "unconditional possessory right
to enter." *Id.* (quotation marks omitted). A person has an
unconditional possessory right to enter his own home and
therefore "cannot be guilty of burglarizing his own home."
*Gauze*, 542 P.2d at 1367. However, a person does not have an
unconditional possessory right to enter a grocery store or a
friend's residence, and thus may be convicted of burglary if
he enters one of these structures with felonious intent even if
he has entered with nominal permission. *See Barry*, 29 P. at
1026-27; *Frye*, 959 P.2d at 212-13. In such a situation, Cali-
fornia law considers the entry to be *unlawful*. In sum, Califor-
nia's definition of "unlawful or unprivileged entry" is entry
with felonious intent into a structure. Our task, under the cate-
gorical approach, is to compare this definition to *Taylor*'s
generic definition of "unlawful or unprivileged," in order to
determine whether California law permits a conviction for
burglary that would not satisfy the "unlawful or unprivileged"
requirement of generic burglary. But *Taylor* did not explain
precisely what it meant by "unlawful or unprivileged entry"—
that is, whether it meant "unlawful or unprivileged" in the
California sense of that term or in a narrower sense. It simply
concluded "that Congress meant by 'burglary' the generic
sense in which the term is now used in the criminal codes of

most States," and then defined "the generic, contemporary meaning of burglary [to] contain[ ] at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598.

Fortunately, the Court did provide us with some guidance as to the meaning of "unlawful or unprivileged entry." In a footnote following its definition of generic burglary, the Court stated:

> This usage approximates that adopted by the drafters of the Model Penal Code: 'A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, *unless the premises are at the time open to the public or the actor is licensed or privileged to enter.*'

*Id.* at 598 n.8 (quoting MODEL PENAL CODE § 221.1 (1980) ("MPC")) (emphasis added). Moreover, following its definition of burglary, the Court cited to a criminal law treatise, which states that modern burglary statutes "generally require that the entry be unprivileged," and that "[a] more precise way of describing this situation is by excluding those entries of premises *when they are open to the public or by a person licensed or privileged to enter.*" WAYNE R. LAFAVE AND AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.13(a) (1986) (emphasis added); *see Taylor*, 495 U.S. at 598.

Based on the use of the disjunctive "or" in both the Model Penal Code and the LaFave and Scott definitions, it appears that the Court meant its "unlawful or unprivileged" requirement to preclude conviction for burglary in two situations: (1) where the premises are open to the public; and (2) where the person is licensed or privileged to enter. The MPC elaborates on these excluded situations as where

> a servant enters his employer's house as he normally is privileged to do, intending on the occasion to steal some silver; a shoplifter enters a department store during business hours to steal from the counters; a litigant enters the courthouse with intent to commit perjury; [and where] a fireman called on to put out a fire resolves, as he breaks down the door of the burning house, to misappropriate some of the house-holder's belongings.

MPC § 221.1 cmt. at 69; *see also* LAFAVE AND SCOTT, *supra*, § 8.13(a) (describing the MPC's definition as "a sound approach").

California law permits burglary convictions both where the premises are open to the public and where the person is licensed or privileged to enter under the above definitions. Regarding the former situation, California permits a burglary conviction where the person enters a place open to the public so long as the person enters with the intent to commit a felony and does not have an unconditional possessory right to enter. In contrast, based on the authorities *Taylor* cites for its generic definition, it appears that an entry is *never* "unlawful or unprivileged" if "the premises are at the time open to the public." MPC § 221.1. California law also permits burglary convictions where a person is licensed or privileged to enter the structure. California law precludes conviction where the alleged burglar has an unconditional possessory right to enter the structure, but the MPC's definition of "licensed or privileged" precludes conviction in the additional situations of "a servant [who] enters his employer's house as he normally is privileged to do, intending on occasion to steal some silver," and "a shoplifter [who] enters a department store during business hours to steal from the counters." MPC § 221.1(a) cmt. at 69. In contrast, California law would permit convictions in these situations—both the servant and the shoplifter could be convicted because they would not have an unconditional pos-

sessory right to enter the structures involved and because they entered with felonious intent. *See Barry*, 29 P. at 1026-27.

*Taylor* provides further support for the conclusion that California law permits convictions for burglary that lack the generic requirement of "unlawful or unprivileged entry." Before setting out its definition of generic burglary, the *Taylor* Court found it "implausible that Congress intended the meaning of 'burglary' . . . to depend on the definition adopted by the State of conviction," as this "would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.' " 495 U.S. at 590-91. The Court went on: "For example, Michigan . . . classifies burglaries into several grades of 'breaking and entering.' In contrast, California defines 'burglary' *so broadly as to include shoplifting*." *Id.* at 591 (emphasis added) (citation omitted). The fact that the Court considered the inclusion of shoplifting to indicate the breadth of California's burglary definition relative to other states' definitions strongly indicates that the Court did not consider shoplifting to involve an "unlawful or unprivileged entry."

[12] In sum, burglary under California Penal Code § 459 is categorically broader than generic burglary because California's definition of "unlawful or unprivileged entry," unlike the generic definition, permits a conviction for burglary of a structure open to the public and of a structure that the defendant is licensed or privileged to enter if the defendant enters the structure with the intent to commit a felony.[23] We turn now to the modified categorical approach.

---

[23]It is worth noting that, under the language we used in Part IV, California Penal Code § 459 can be classified as containing a "broad" definition of "unlawful or unprivileged entry," or missing the generic element of unlicensed or unprivileged entry altogether. For our purposes, this distinction is irrelevant.

B

Our inquiry under the modified categorical approach is whether the record demonstrates that Aguila's conviction necessarily rested on facts that satisfy the elements of "burglary of a dwelling." Our analysis as to the manner in which California burglary is categorically broader than generic burglary makes clear that the modified categorical approach is of no help to the government in Aguila's case.

The government submitted three documents. First, the government submitted the California court's Certificate and Order of Magistrate, which certified that Aguila and counsel

> appeared before [the judge] in open court; that [the judge] read the said complaint to said defendant; and that [the judge] then asked the said defendant whether he pleaded guilty to the offense(s) charged in said complaint. . . . *[T]he said defendant pleaded guilty to the following offense(s) charged in said complaint*, to wit: Burglary, in violation of section 459, Penal Code, a Felony.

(Emphasis added.) In turn, Count 1 of the Felony Complaint to which Aguila pled guilty alleges that:

> On or about January 4, 1988, in the County of Los Angeles, the crime of RESIDENTIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by GUILLERMO AGUILA, who did willfully and *unlawfully* enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Jacinto Padilla, with the intent to commit larceny and any felony.

(Emphasis added.) Finally, the government submitted the certified Abstract of Judgment, which confirms that Aguila was

in fact convicted of the first-degree residential burglary offense alleged in Count 1 of the Felony Complaint.

When a defendant pleads guilty to a count, he admits the factual allegations stated in that count. *Rodriguez-Rodriguez*, 393 F.3d at 857; *Velasco-Medina*, 305 F.3d at 852. The government argues that Aguila's plea of guilty to the offense charged in Count 1 of the Felony Complaint reveals that he "unlawfully enter[ed]" the structure, and therefore that his entry was "unlawful or unprivileged." Under our cases applying the modified categorical approach to California Penal Code § 459, the government is certainly on solid ground. We have consistently held that the presence of the word "unlawfully" in an indictment to which the defendant pled guilty (as shown by the judgment of conviction) supplies the "unlawful or unprivileged" requirement of the generic burglary definition. In *Rodriguez-Rodriguez*, for example, the defendant "pled guilty to 'willfully and *unlawfully* enter[ing] a building with the intent to commit theft.' " 393 F.3d at 857 (alteration in original). We relied on this indictment to hold that, "[b]ecause [defendant's] conviction included the unlawful entry requirement absent in California's statutory definition of burglary, his conviction meets the definition of 'burglary of a dwelling' under *Taylor* and is, therefore, a 'crime of violence' under the Sentencing Guidelines." *Id.* at 857-858; *Smith*, 390 F.3d at 664-66; *Velasco-Medina*, 305 F.3d at 852; *Williams,* 47 F.3d at 995; *Alvarez*, 972 F.2d at 1005-06; *Dunn*, 946 F.2d at 620; *O'Neal*, 937 F.2d at 1373.

However, these cases did not delve deeply into California's case law construing California Penal Code § 459. Our reading of this case law leads us to conclude that *Rodriguez-Rodriguez* and the cases using similar reasoning incorrectly applied the modified categorical approach because, quite simply, the word "unlawfully" in Aguila's indictment tells us nothing about whether his entry was "unlawful or unprivileged" in the generic sense.

As discussed above, although California Penal Code § 459 does not use the words "unlawful or unprivileged" to modify the word "entry," the California Supreme Court has indeed established a form of an "unlawful or unprivileged entry" requirement—it has required that the defendant's felonious intent be formed prior to the entry, and has permitted a burglary conviction only where the defendant did not have an unconditional possessory right to enter the structure. *See, e.g.*, *Gauze*, 542 P.2d at 1367. We have determined today that the main difference between California's requirement of unlawful entry and the generic definition's requirement is that the generic definition excludes entry into a structure open to the public and entry into a structure that the defendant is licensed or privileged to enter, while the California definition permits conviction in these situations where the defendant entered with the intent to commit a crime and did not have an unconditional possessory right to enter (such as with shoplifting).

The words "unlawfully enter" in Aguila's indictment provide us with no indication as to whether Aguila was licensed or privileged to enter Jacinto Padilla's home or whether Padilla's home was open to the public because, under California law, such entries *would be* unlawful even if Aguila entered the home with Padilla's permission. We therefore disagree with Judge Rawlinson's contention that "[b]y pleading guilty to unlawfully entering a dwelling occupied by someone else, Aguila-Montes necessarily admitted that there was no licensed or privileged entry premised on a possessory interest or on the occupant's informed consent." Rawlinson Op. at 10695. To the contrary, because of California's unusual approach to defining unlawful or unprivileged entry, the *Shepard* documents do not permit such an inference. Examining only those documents, we could not rule out the possibilities that Aguila was attending a dinner party at Padilla's invitation; that Padilla was hosting an open house which Aguila took advantage of; that Padilla had asked Aguila to house-sit while he was away for vacation; or that Aguila had a key to Padilla's house, and that Padilla had told him he was

free to enter at any time unless he was planning to rob the house.

**[13]** In short, conviction records for California burglary cannot demonstrate that a defendant was convicted of generic burglary unless they do something more than simply repeat the elements of California burglary. Here, for example, if the Felony Complaint to which Aguila pled guilty stated that Aguila "did willfully and unlawfully enter a private inhabited dwelling house without the owner's consent," the document would have been sufficient to support a finding that Aguila had committed generic burglary. They did not. The documents only reveal that Aguila pled guilty to the bare elements of California burglary. Accordingly, under the modified categorical approach, the documents produced by the government do not demonstrate that Aguila's conviction necessarily rested on facts satisfying the elements of the generic crime of "burglary of a dwelling."

## VI

**[14]** *Navarro-Lopez*'s two-paragraph analysis with respect to the modified categorical approach, including its "missing element" rule, *see* 503 F.3d at 1073, is overruled. However, Aguila's conviction for first-degree residential burglary under California Penal Code § 459 does not qualify as a "crime of violence" under either the categorical or modified categorical approach. Accordingly, we vacate the district court's sentence and remand to the original three-judge panel for consideration of the remaining issues Aguila raised on appeal.

VACATED AND REMANDED.

BERZON, Circuit Judge, concurring in the judgment, joined by Chief Judge KOZINSKI and Judges W. FLETCHER, M. SMITH, and N.R. SMITH:

It is common ground—as it of course has to be—that *Taylor v. United States*, the "grandfather" Supreme Court case on the question of applying federal recidivism statutes to particular prior convictions, instructs sentencing courts assessing a criminal defendant's prior conviction to employ a "categorical approach." 495 U.S. 575, 600 (1990). Under that approach, we are directed to consider the elements of the crime of conviction in general, not the conduct underlying the defendant's conviction in particular. *Id.* at 602. The problem we address today arises when those elements and the requirements of the federal recidivist statute in question do not match.

As to that question, *Taylor* tells us that the categorical approach may be modified, but *only* "in a *narrow range of cases* where [the trier of fact] was actually required to find all the *elements* of [the] generic [crime]." *Id.* at 602 (emphases added). This "modified categorical approach," must remain categorical, not factual or "circumstance-specific." *Nijhawan v. Holder*, 129 S. Ct. 2294, 2298 (2009); *see Taylor*, 495 U.S. at 600-02. Were we to abandon the categorical focus, we have been warned repeatedly, a number of practical and constitutional difficulties would ensue. *See Chambers v. United States*, 129 S. Ct. 687, 690 (2009); *James v. United States*, 550 U.S. 192, 214 (2007); *Shepard v. United States*, 544 U.S. 13, 25 (2005) (plurality op.); *Shepard*, 544 U.S. at 28 (Thomas, J., concurring); *Taylor*, 495 U.S. at 600-01.

The majority finds in these instructions license for sentencing courts to "consider[ ] to some degree the factual basis" of a (possibly decades-old) prior conviction. Bybee op. at 10613. So long as the sentencing court is "confident," upon examining the "prosecutorial theory of the case" and "the facts put forward by the government" in the earlier proceeding, that the trier of fact was "required" (in a practical, but not legal,

sense) to find facts that would satisfy the generic crime, then it may enhance a defendant's sentence on that basis. *Id.* at 10615. And the sentencing court must do so not only when there was a trial, but also where there was a guilty plea, and thus no way to determine what "theory of the case" the non-existent trier of fact must have adopted. Most crucially, the sentencing court need no longer confine itself to the facts related to the elements of the crime of conviction, even though the prior proceeding, whether ended with a jury verdict or a guilty plea, will have been concerned at bottom only with assessing those elements, and even though *elements* have long been the touchstone of the categorical and modified categorical approach.[1] *See Sykes v. United States*, 131 S. Ct. 2267, 2272 (2011); *Johnson v. United States*, 130 S. Ct. 1265, 1272 (2010); *Chambers*, 129 S. Ct. at 690-91; *Nijhawan*, 129 S. Ct. at 2297-98; *Begay v. United States*, 553 U.S. 137, 145 (2008); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186-87 (2007); Shepard, 544 U.S. at 19; *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004); *Taylor*, 495 U.S. at 600-02. In short, the majority has converted the modified categorical approach into a modified factual one.

The majority's fact-based approach simply cannot be reconciled with *Taylor* and its many Supreme Court progeny. *Taylor* warned that "the practical difficulties and potential unfairness of a factual approach are daunting," and therefore rejected a factual approach, even though "[i]n some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury." *Id.* at 601. And the

---

[1]"Elements" are those necessary and sufficient facts that, if proven (or admitted), support a conviction for a particular crime. *See United States v. Beltran-Munguia*, 489 F.3d 1042, 1045 (9th Cir. 2007) ("To constitute an element of a crime, the particular factor in question needs to be a constituent part of the offense [that] must be proved *in every case* to sustain a conviction under a given statute." (citation and quotation marks omitted, alterations in original)); *see generally Richardson v. United States*, 526 U.S. 813, 817 (1999) ("Calling a particular kind of fact an 'element' carries certain legal consequences.").

Court has recognized that a fact-based approach has even less traction in the guilty plea context. *See id.* at 601-02.

In adopting its fact-based approach, the majority overrules our circuit's controlling precedent; dismisses as "dicta" and "illustrative" the Supreme Court's clear guidance on this very question, Bybee op. at 10599, 10606; misinterprets *Taylor* and *Shepard*; ignores the constraints of the Sixth Amendment, as developed in the *Apprendi* line of cases; misapprehends several essential characteristics of our nation's institutions of criminal justice; and refuses to follow the limited modified categorical approach adopted by every circuit that has addressed the question since the Supreme Court made the proper approach lucidly clear in the last few years—in particular, since *Johnson* and *Nijhawan*. Because I believe that the modified categorical approach has been strictly limited to "divisible statutes,"[2] I concur only in the judgment.

## I.

Before delving into the "modified categorical" problem on a conceptual level, I begin where intermediate appellate judges ought to begin—with whether the issue before us is open to fair dispute as a matter of binding Supreme Court precedent. Unlike the majority, I conclude that it definitely is not, as virtually all other circuits have recently recognized.

As will appear, I do not think *Taylor* and *Shepard* ever meant the modified categorical approach to go beyond what the majority calls "divisible statutes." *Taylor* and *Shepard* are examined in detail below. Suffice it to say for present pur-

---

[2]Like the majority, I use the term "divisible statute" as shorthand to refer to a statute that lists alternative ways that one or more elements can be established. Limiting the modified categorical approach to the "divisible statute" situation, as I would do, means that it may only be used to determine under which express statutory alternative the defendant was convicted.

poses that *Taylor* held that when determining whether a defendant's prior conviction qualifies under one of several federal recidivist statutes, sentencing courts are ordinarily instructed to compare the elements of the particular crime for which the defendant was convicted with the elements of the "generic" federal definition of that crime. *See Taylor*, 495 U.S. at 600-02. When the elements match, the conviction qualifies for the recidivist enhancement. If, however, at least one of the elements of the crime of conviction is written in the disjunctive—criminalizing, for example, commission of an act with "a gun or a knife"—and a conviction under one statutory phrase (gun) would qualify under the federal recidivist statute, while a conviction under the other phrase (knife) would not, *Taylor* and *Shepard* allow the later sentencing court to consult a short list of records about that prior conviction to ascertain whether the crime of conviction meets the federal definition. *See id.* at 602; *Shepard*, 544 U.S. at 26.

As I discuss later, the majority is right that the modified categorical approach outlined in *Taylor* and *Shepard* was, at times, interpreted differently in this court and in other circuits. *See* Bybee op. at 10589-91, 10606-12. But *Taylor* and *Shepard* are no longer the last word. It is therefore most useful to start with the Supreme Court's recent cases, *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), and *Johnson v. United States*, 130 S. Ct. 1265 (2010), as they dispel any ambiguity concerning the reach of *Taylor* and *Shepard*. *Nijhawan* and *Johnson* indicated in the clearest of terms that the modified categorical approach is reserved for determining under which portion of a divisible statute a defendant was convicted.

## A.

*Nijhawan* considered a provision of immigration law that authorizes removal of non-citizens who have a prior conviction for "an offense that . . . involves fraud or deceit *in which the loss to the victim or victims exceeds $10,000*." 129 S. Ct. at 2297 (alteration and emphasis in original) (quoting 8

U.S.C. § 1101(a)(43)(M)(i)). The Court was called upon to consider "whether the italicized language refers to an element of the fraud or deceit 'offense' as set forth in the particular fraud or deceit statute defining the offense of which the alien was previously convicted." *Id.* "If so," *Nijhawan* explained, "then in order to determine whether a prior conviction is for the kind of offense described, the immigration judge must look to the criminal fraud or deceit *statute* to see whether it contains a monetary threshold of $10,000 or more." *Id.* (citing *Taylor*, 495 U.S. 575) (emphasis added). After extensive textual analysis, *see id.* at 2298-2302, *Nijhawan* concluded that *because* the italicized language in the aggravated felony definition "does not refer to an *element* of the fraud or deceit crime," it required a factual inquiry into the amount of loss actually occasioned by the alien's particular prior criminal conduct, rather than a categorical inquiry into the elements of the prior conviction offense. *Id.* at 2298-99 (emphasis added).

The Court's reasoning in *Nijhawan* could not be clearer: *if* the loss threshold referred to an element of the generic crime, then a crime of conviction would only qualify if "the criminal fraud or deceit statute . . . contains a monetary threshold of $10,000 or more." *Id.* at 2297. In other words, *Nijhawan* envisions a binary world of federal recidivism statutes: Factual inquiries into the circumstances of prior convictions are permitted if, but only if, the federal statute does not refer to the element of the prior crimes, but to the underlying circumstances of the prior crime—in which case the entire *Taylor* categorical analysis is inapplicable. *See id.* at 2298-2302.

The remainder of *Nijhawan* confirms this conclusion in spades. The petitioner in *Nijhawan* argued that even if the $10,000 loss threshold was not an element of the prior crime, the factual inquiry into the nature of that crime should be limited to the same documents in the record of conviction to which *Shepard* limits sentencing courts under the modified categorical approach. *See* 129 S. Ct. at 2302-03. The Court

rejected the argument for several reasons, two of which are particularly relevant here.

First, *Nijhawan* said that "*Taylor*, *James*, and *Shepard*, the cases that developed the evidentiary list to which petitioner points, developed that list for a very different purpose, namely that of determining *which statutory phrase* (contained within a statutory provision that covers several different generic crimes) covered a prior conviction." *Id.* at 2303 (emphasis added). *Nijhawan* then referred to its earlier description of the modified categorical approach, in which it explained that:

> [T]he categorical method is not always easy to apply. Sometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately. And it can happen that some of these crimes involve violence while others do not. A single Massachusetts statute section entitled "Breaking and Entering at Night," for example, criminalizes breaking into a "building, ship, vessel or vehicle." *In such an instance*, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (e.g., breaking into a building rather than into a vessel), by examining the indictment or information and jury instructions, or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or some comparable judicial record of the factual basis for the plea.

*Id.* at 2299 (emphasis added, citations and quotation marks omitted).

The second reason the Court gave for not restricting sentencing courts to the *Shepard*-sanctioned documents in ascertaining the loss amount was that "[this] proposal itself can prove impractical insofar as it *requires* obtaining from a jury

a special verdict on a fact that . . . is not an element of the offense." *Id.* at 2303 (emphasis added).

In short, *Nijhawan* is crystal clear: The modified categorical approach is used to determine under which provision of a divisible statute a defendant was convicted, and it cannot be used to find non-elemental facts. The majority discusses *Nijhawan* (although tellingly, it does not mention its "special verdict" reasoning) but brushes its guidance aside as "dicta." Bybee op. at 10599. Regardless of one's definition of "dicta," this isn't it.

*Nijhawan*'s discussion of the scope, purpose, and applicability of the categorical and modified categorical approach to Nijhawan's case was in direct response to arguments briefed and pressed by the parties. The arguments were further developed in four *amicus curiae* briefs and in the opinions of the Third Circuit, *Nijhawan v. Att'y Gen. of the U.S.*, 523 F.3d 387 (3d Cir. 2008), and the Board of Immigration Appeals, *In re Nijhawan*, No. A39 075 734, 2006 WL 3088788 (B.I.A. Aug. 8, 2006). There is no concern, therefore, that the issues were not adequately presented—or, as Judge Posner has put it, that they "w[ere] not refined by the fires of adversary presentation." *United States v. Crawley*, 837 F.2d 291, 293 (7th Cir. 1988).

Moreover, as explained above, the Court's holding—that a categorical approach is inapplicable to non-elemental facts, and, consequently, the court or agency may rely on non-elemental facts only where a statute permits a non-categorical approach—was ultimately dispositive of Nijhawan's case. The Court's extended discussion of the categorical and modified categorical approach was thus "grounded in the facts of the case," *id.*, and was certainly " 'germane to [its] eventual resolution,' " *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (citation omitted). These were not "statement[s] . . . uttered in passing without due consideration of the alternatives." *United States v. Johnson*, 256 F.3d

895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring). Additionally, since these holdings were part of the logical reasoning provided in support of *Nijhawan*'s outcome, the reasons that the Court gave for its conclusions cannot be described as "unnecessary," *Miller v. Gammie*, 335 F.3d 889, 902 (9th Cir. 2003) (en banc) (Tashima, J., concurring), any more than the ground floor is "unnecessary" to a multi-story building. So while the majority may find it convenient to dismiss *Nijhawan*'s pertinent reasoning as mere "dicta," that does not make it so. Further, even if it *were* dicta, as the majority suggests—and again, it certainly is not—we must "treat Supreme Court dicta with due deference," not brush it aside, as the majority does. *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996). "As we have frequently acknowledged, Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly, we do not blandly shrug them off because they were not a holding." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (citation and quotation marks omitted).

## B.

Were *Nijhawan* not clear enough—and it is—*Johnson* dispels any remaining doubt. *Johnson* held that a conviction under Florida's divisible battery statute, Fla. Stat. § 784.03, was not categorically a violent felony because the statute encompassed convictions for "*any* intentional physical contact, no matter how slight." *Johnson*, 130 S. Ct. at 1269-70 (citation and quotation marks omitted). Such convictions, the Supreme Court held, lacked the "violent force" necessary to make a conviction thereunder a "violent felony" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B). *See Johnson*, 130 S. Ct. at 1271. The dissenters objected that this holding would make it more difficult to remove non-citizens convicted under that statute and other "generic felony-battery statutes that cover both violent force and

unwanted physical contact." *Id.* at 1273 (characterizing dissenting opinion of Alito, J.). The Court responded:

> This exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "modified categorical approach" that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record . . . .

*Id.* (citation and quotation marks omitted).

The majority reads *Johnson*'s description of the functioning of the modified categorical approach as merely "illustrative." Bybee op. at 10606. But it gives no reason to take such a view of this passage in *Johnson*, and there is none. *Johnson* sought to highlight the flexibility that the modified categorical approach provides. So, if the modified categorical approach does, as the majority in this case maintains, allow the sentencing court to examine "the facts put forward by the government" in the earlier proceeding to determine the facts on which the conviction must have rested, Bybee op. at 10615, the Supreme Court had every reason to say so. That *Johnson* instead contemplates a far more circumscribed, less flexible inquiry—one limited to identifying "which statutory phrase was the basis for the conviction," 130 S. Ct. at 1273— confirms that nothing more is permissible.

The majority says that it has "several reasons" for declining to follow the clear import of *Nijhawan* and *Johnson*, but it only names two. Both amount to the assertion that since the Supreme Court did not say explicitly that we cannot do what the majority now does, it's fair game. *See* Bybee op. at 10605. Not so. If we dutifully apply the principles enunciated by the

Supreme Court, we can only conclude that the modified categorical approach applies only to divisible statutes.

## C.

Seeking support for its conclusion that the question we address is an open one in the Supreme Court, the majority incorrectly maintains that the other courts of appeal are in broad disagreement as to the correct modified categorical approach. In fact, since 2008, and especially since *Nijhawan*, there has been a steady march toward applying the modified categorical approach only to divisible statutes.

It is fair to say that the courts of appeals—including this one—failed at first fully to appreciate the outer limits of the categorical and modified categorical approaches. At one time, the courts of appeals settled into essentially three camps: Some, recognizing that juries are never required to find facts that go beyond the elements of the crime, ruled that the modified categorical approach is available only to determine under which portion of a divisible statute the defendant was convicted. *See, e.g.*, *United States v. Smith*, 544 F.3d 781, 786-87 (7th Cir. 2008); *United States v. Howell*, 531 F.3d 621, 622-23 (8th Cir. 2008); *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297-98 (5th Cir. 2008). Other courts applied the modified categorical approach more liberally, finding that prior convictions rested on facts that appeared nowhere in the statute of conviction. *See, e.g.*, *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006); *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108-09 (10th Cir. 2006).

In this circuit, after considerable waffling, we struck a middle course, interpreting *Taylor* and *Shepard* to permit resort to the modified categorical approach to find generic facts that are fairly encompassed within an element of the statute of conviction—i.e., in both what the majority terms the "divisible statute" and "broad element" situation, *see* Bybee op. at 10593-95—but not when the generic element was entirely

missing. *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (en banc).**3** This approach required a connection between the generic fact to be found at sentencing and the elements found in the prior proceeding, and so provided assurance that facts mined from the record of conviction would have been viewed by the parties to the prior proceeding as material and thus worth contesting. *See also Li v. Ashcroft*, 389 F.3d 892, 900 (9th Cir. 2004) (Kozinski, J., concurring).

This three-way split is gone. The majority strains mightily to manufacture ambiguity in the jurisprudence of a few circuits, *see* Bybee op. at 10606-12, but the stark reality is that since *Nijhawan* and *Johnson*, *every* circuit to examine the issue has applied an approach consistent with those two cases' pronouncements, the majority's relegation of those pronouncements to the "dicta" wastebasket notwithstanding.

For example, the majority cites two Tenth Circuit cases (from 2006 and 2007, respectively) as support for a fact-based approach. *See id.* at 10610-11 & n.15. But those cases do not allow a sentencing court to review non-element facts.**4** More-

---

**3**The majority, joined by Judge Rawlinson and her co-dissenters, suggests that *Navarro-Lopez* precludes us from applying the modified categorical approach to broad-element statutes. *See* Bybee op. at 10594-95; Rawlinson op. at 10684. That's wrong. *See Navarro-Lopez*, 503 F.3d at 1073.

**4**The 2007 case merely rejected a defendant's argument that in calculating his criminal history category under the Sentencing Guidelines, the district court should be prohibited from examining any documents not permitted under *Shepard*. *See United States v. Townley*, 472 F.3d 1267, 1277 (10th Cir. 2007). In other words, *Townley* is not about the modified categorical approach at all.

The 2006 case, on the other hand, did use the modified categorical approach to determine that a particular conviction under Colorado Revised Statutes § 18-6-701 (for "induc[ing], aid[ing], or encourag[ing] a child to violate any federal or state law, municipal or county ordinance, or court order commits contributing to the delinquency of a minor") constituted the aggravated felony of sexual abuse of a minor. *See Vargas v. Dep't of*

over, the majority overlooks later Tenth Circuit case law clarifying further that the modified categorical approach "does not involve a subjective inquiry into the facts of the case, but rather its purpose is to determine 'which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face.' " *United States v. Charles*, 576 F.3d 1060, 1067 (10th Cir. 2009). Indeed, in 2008 the Tenth Circuit resolved an intra-circuit split that involved, at times, cases that were "not always focused on the elements of the prior conviction." *United States v. Zuniga-Soto*, 527 F.3d 1110, 1121 (10th Cir. 2008). The Tenth Circuit resolved this conflict by declaring that when determining whether a prior conviction was for a "crime of violence," thereby qualifying the defendant for a sentencing enhancement, courts "must consider only the statutory definition of the prior offense and not the specific factual circumstances underlying the defendant's conviction."[5] *Id.*

---

*Homeland Sec.*, 451 F.3d 1105, 1108-09 (10th Cir. 2006). As the majority points out, the predicate offense (that the suspect allegedly induced the minor to commit) "could be anything from jaywalking to murder." *Id.* at 1109. What the majority omits, however, is that "the specific predicate offense must be charged and proved as an element of the offense of contributing to the delinquency of a minor." *Id.* In other words, the statute is divisible; as *Vargas* explained, "to convict a defendant of contributing to the delinquency of a minor, the jury 'necessarily ha[s] to find' a specified predicate offense that the defendant induced, aided, or encouraged the child to violate." *Id.* (quoting Taylor, 495 U.S. at 602) (alteration in original). One element of the offense to which the *Vargas* defendant pleaded guilty was that he had "induced, aided, or encouraged the minor" to engage in "nonconsensual sexual contact," in violation of Colorado Revised Statutes § 18-3-404. *Id. Vargas* thus concluded—upon examination of only the *elements* of the crime of conviction—that the defendant had been convicted of the generic crime of sexual abuse of a minor. *See id.* The majority is thus left without support for its contention that the Tenth Circuit applies the modified categorical approach to find non-elemental facts.

[5]The majority acknowledges that *Zuniga-Soto* adopted a "divisible-statute-only rule," but argues that its reach is circumscribed. Bybee op. at 10611 n.15. But even if that is true, no one can contest that the Tenth Circuit applies a "divisible-statute-only rule" in circumstances where the majority would not.

The majority similarly, and similarly erroneously, claims support for its open-ended approach from a 2006 case from the Sixth Circuit, *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006). Bybee op. at 10608-12 & n.13. But in *United States v. Bartee*, 529 F.3d 357 (6th Cir. 2008), the Sixth Circuit rejected an argument that presaged the analysis adopted by the majority.

The criminal defendant in *Bartee* had been previously convicted of violating a statute that criminalizes "sexual contact with another person . . . . under circumstances involving the commission of any other felony." Mich. Comp. Laws Ann. § 750.520c(1)(c); *see Bartee*, 529 F.3d at 360. The information to which the defendant had pleaded guilty identified the "other felony" as "solicitation of a minor for immoral purposes." *Id.* The information even identified the individual with whom the defendant had sexual contact while soliciting a minor for immoral purposes as "Angela," and there was no dispute in *Bartee* that Angela was 15 years old. *Id.* at 360-61. The Government conceded that the defendant's conviction for criminal sexual contact lacked the federal generic crime's element of contact with a minor, but urged the court to "use 'common sense' to infer that since the defendant had sexual contact with Angela 'while' soliciting a minor, Angela must have been that minor and, therefore, the sexual contact must have been with a minor." *Id.* at 361.

The Sixth Circuit emphatically rejected the Government's argument. Although it recognized that "this [inference] appears to have been the case *factually*," the court agreed "with defendant that, *categorically speaking*, the conviction did not necessarily require proof of sexual contact with a minor." *Id. Bartee* in fact criticized the district court for permitting "facts [to] invade[ ] [its] analysis." *Id.*[6]

---

[6]Subsequent panels of the Sixth Circuit have adhered to *Bartee*'s approach, maintaining that the modified categorical approach is only appropriate in the divisible statute situation and disavowing earlier Sixth Circuit cases indicating otherwise. *See United States v. Young*, 580 F.3d 373, 380 n.8 (6th Cir. 2009); *see also Kellermann v. Holder*, 592 F.3d 700, 703 (6th Cir. 2010).

Some other examples: Citing a 2004 case, the majority claims that the Third Circuit's approach is "ambiguous." Bybee op. at 10611-12 & n.16. Whether or not that is a fair characterization of the Third Circuit case cited,[7] the Third Circuit now consistently applies the divisible statute approach. *Jean-Louis v. Attorney General of the United States*, 582 F.3d 462 (3d Cir. 2009), summarized that approach:

> Where a statute of conviction contains disjunctive elements, some of which are sufficient for conviction of the federal offense and others of which are not, we have departed from a strict categorical approach. In such a case, we have conducted a limited factual inquiry, examining the record of conviction for the narrow purpose of determining the specific subpart under which the defendant was convicted.

*Id.* at 466; *see also Thomas v. Att'y Gen. of U.S.*, 625 F.3d 134, 143-47 (3d Cir. 2010); *United States v. Stinson*, 592 F.3d 460, 462 (3d Cir. 2010); *United States v. Johnson*, 587 F.3d 203, 208, 214 (3d Cir. 2009).

---

[7]It is not. *Knapik v. Ashcroft*, 384 F.3d 84, 92 n.8 (3d Cir. 2004), cited by the majority for its "ambiguous" label, principally addressed a different problem. Specifically, *Knapik* held (as *Nijhawan* did later) that the modified categorical approach does not apply where a statute requires an inquiry into a fact underlying the prior conviction. *See also Nijhawan*, 523 F.3d at 391-92, *aff'd*, 129 S. Ct. 2304. As to the problem before us, *Knapik* indicated agreement with the "divisible statute" approach. *See* 384 F.3d at 92 n.8. The case on which the *Knapik* relied, *Singh v. Ashcroft*, 383 F.3d 144 (3d Cir. 2003), refused to apply the modified categorical approach to determine whether the alien had been convicted of the aggravated felony of "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A). *Singh* explained that although the record was quite clear that the victim "was under sixteen years of age," 383 F.3d at 147, "a finding of the age of the victim [was] not required for conviction" under the state statute, and therefore the conviction could not be considered an aggravated felony. *Id.* at 153.

The majority similarly, and incorrectly, describes the state of the law in the Second and Eleventh Circuits as "ambiguous." Bybee op. at 10611-12 & nn. 15 & 17. Not so. Both the Second[8] and Eleventh[9] Circuit restrict the modified categorical approach to the divisible statute situation. The majority's attempt to muddy the Seventh Circuit's jurisprudence is similarly unavailing, as that circuit also refuses to apply the modified categorical approach unless the statute is divisible.[10] *See*

---

[8]*See, e.g., Lanferman v. Bd. of Immigration Appeals*, 576 F.3d 84, 88-89 (2d Cir. 2009) (per curiam) ("The modified categorical approach calls for a two-step inquiry: first, we determine if the statute is divisible, such that some categories of proscribed conduct render an alien removable and some do not; second, we consult the record of conviction to ascertain the category of conduct of which the alien was convicted." (quotation marks omitted)); *United States v. Mills*, 570 F.3d 508, 511 (2d Cir. 2009) (per curiam); *Hoodho v. Holder*, 558 F.3d 184, 189 (2d Cir. 2008); *Martinez v. Mukasey*, 551 F.3d 113, 120 (2d Cir. 2008); *Gertsenshteyn v. U.S. Dep't of Justice*, 544 F.3d 137, 143 (2d Cir. 2008) (same). In fact, Judge Bybee previously wrote that "[t]he Second . . . Circuit[ ] appear[s] to require that the statute be divisible; that is, the statute of conviction contain at least one subsection that meets the generic definition, even if another section would not satisfy the definition." *Aguilar-Turcios v. Holder*, 582 F.3d 1093, 1109 n.8 (9th Cir. 2009) (Bybee, J., dissenting). The Second Circuit has not changed its rule since *Aguilar-Turcios* was published.

[9]*See United States v. Palomino Garcia*, 606 F.3d 1317, 1336-37 (11th Cir. 2010) ("[W]hen the law under which a defendant has been convicted contains different statutory phrases—some of which require the use of force and some of which do not—the judgment is ambiguous and we apply a 'modified categorical approach.' Under this approach, a court may determine which statutory phrase was the basis for the conviction by consulting a narrow universe of '*Shepard* documents.' " (citations omitted)).

[10]The majority maintains that *United States v. Fife*, 624 F.3d 441 (7th Cir. 2010) shows that the Seventh Circuit has wavered from its divisible-statute-only rule by holding that an Illinois statute that states that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except [various enumerated crimes]" is a divisible statute. 720 Ill. Comp. Stat. 5/33A-2(a) (2007). The majority argues that, "in our terminology [*Fife*] defined 'divisible statute' in a manner that would encompass missing element statutes." Bybee op. at 10608. That's wrong. The Illinois crime of "armed violence" has two elements: (1) while armed with a dangerous weapon, the

*United States v. Sonnenberg*, 628 F.3d 361, 367 (7th Cir. 2010) (refusing to apply the modified categorical approach to the statute at issue, as it "simply was not drafted so as to be divisible in th[e] [relevant] manner," and even though the conduct underlying the conviction was clear); *United States v. Woods*, 576 F.3d 400, 406 (7th Cir. 2009); *United States v. Smith*, 544 F.3d 781, 786-87 (7th Cir. 2008).

The final count: *All* of our sister circuits (except for the District of Columbia Circuit, which apparently has had no occasion to weigh in on whether the modified categorical approach applies beyond the divisible statute context[11]) now apply the modified categorical approach only to divisible statutes.[12] By overruling *Navarro-Lopez*, our circuit becomes the only one to expand the scope of our modified categorical inquiries in the wake of the Supreme Court's recent, lucid direction that we narrowly restrict them.

---

defendant (2) commits any felony under Illinois law, with a few enumerated exceptions. *See* 720 Ill. Comp. Stat. 5/33A-2(a). It is true that the statute does not incorporate a list of the state-law felonies that would meet the second element. But there is no need, as a comprehensive list of those qualifying crimes was readily ascertainable by referencing the rest of the state-law code. As *Fife* pointed out, "[t]he point is that the statute itself is 'divisible'—that is, it *expressly* identifies several ways in which a violation may occur." *Fife*, 624 F.3d at 446 (citation omitted).

[11]There is good reason to think that the District of Columbia Circuit would not adopt the "theory of the case" approach advocated by the majority. *See, e.g.*, *In re Sealed Case*, 548 F.3d 1085, 1091 (D.C. Cir. 2008) ("[U]nder *Shepard* the question is not what [the defendant] *probably* pled to, but what he *necessarily* pled to.").

[12]The majority acknowledges that this is the rule in the First, Fourth, Fifth, and Eighth circuits. *See United States v. Giggey* (*Giggey I*), 551 F.3d 27, 40 (1st Cir. 2008) (en banc); *see also United States v. Giggey* (*Giggey II*), 589 F.3d 38, 41-42 (1st Cir. 2009); *United States v. Rivers*, 595 F.3d 558, 564 (4th Cir. 2010); *United States v. Hughes*, 602 F.3d 669, 676 (5th Cir. 2010); *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297-98 (5th Cir. 2008); *United States v. Ossana*, 638 F.3d 895, 904 (8th Cir. 2011); *United States v. Webster*, 636 F.3d 916, 919 (8th Cir. 2011); *United States v. Boaz*, 558 F.3d 800, 808 (8th Cir. 2009).

## II.

Even were we free to ignore the more recent Supreme Court cases—and of course we are not—the majority could not adopt the rule that the modified categorical approach is available to find any facts the jury "must have found." Bybee op. at 10613. *Taylor* and *Shepard* simply do not admit of that interpretation.

## A.

*Taylor* considered a conviction under a state burglary statute.[13] 495 U.S. at 578 n.1. The Court first concluded that crimes described by federal recidivism statutes must be understood generically—that is, as describing uniform elements rather than the elements defined by each state's law. *Id.* at 592. After defining the generic crime of burglary, *Taylor* turned to the problem of determining whether a particular state conviction was for the generic, federally-defined crime —here and in *Taylor*, the crime of burglary. Framing the choice of approaches to this problem as "whether the sentencing court . . . must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes," *Taylor* adopted the then-uniform position of the courts of appeals, that courts must look "only to the statutory definition[ ]." *Id.* at 600 (citing, *inter alia*, *United States v. Chatman*, 869 F.2d 525, 529 (9th Cir. 1989), and *United States v. Sherbondy*, 865 F.2d 996, 1006-10 (9th Cir. 1988)).

*Taylor* then directly addressed the question before us today: How do we match a prior state conviction to the crime cov-

---

[13]As in every modified categorical case that the Supreme Court has considered, the statute at issue in *Taylor* was divisible in the relevant respect: Missouri had a number of burglary statutes, each of which listed different categories of locations which, if entered, could support a burglary conviction. *See* 495 U.S. at 578 n.1.

ered by a federal recidivism statute where the state conviction was under a statute that prohibits both conduct covered by the federal statute and other conduct that does not count for federal purposes. In that circumstance, *Taylor* permitted federal courts and agencies to go beyond consulting the state statutory definition, but *only* in "a *narrow* range of cases where a jury was actually required to find all the elements of [the] generic [crime]." *Id.* at 602 (emphasis added).

A jury is only "required" to find whether, on the facts before it, the elements of the crime charged have been proven. Other factual circumstances surrounding the crime—if it was a dark and stormy night, whether the postman actually rang twice, that the defendant wore a scarlet kimono, whether defendant harmed the victim using a gun or a blunt object, that a note with the word "moor" was found—may be central, even essential, considerations for the jury in determining what actually happened, as any reader of Sherlock Holmes stories or Agatha Christie novels knows. Still, while "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element," the jury need not "decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999).[14] Because juries are never "required" to find anything *other* than elements of the crime as set out in the pertinent statute, the fact-based rule the majority adopts today is at odds with *Taylor*.

---

[14]State juries need not agree on non-element facts. *See Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality op.) ("[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." (citation and quotation marks omitted); *Schad*, 501 U.S. at 649 (Scalia, J., concurring) ("[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.")).

The majority's approach is no more consistent with *Shepard*'s more specific instructions for applying the modified categorical approach to guilty pleas. *See* 544 U.S. at 16. *Shepard*, like this case, considered a guilty plea under a divisible, non-generic burglary statute. *Id.* Translating *Taylor*'s "actually required" standard to the plea context, *Shepard* held that the modified categorical approach is available only to find facts that were "necessarily admitted" in the prior proceeding. *Id.* Disapproving a standard strikingly similar to the one the majority adopts in this case, *Shepard* declared off-limits factual determinations "about what the defendant and state judge *must have* understood as the factual basis of the prior plea." *Id.* at 25 (plurality op.) (emphasis added). *Shepard* also emphasized that no matter the likelihood in light of the plausible theories apparent from the record that a conviction rested on generic facts, that likelihood could not satisfy *Taylor*'s "demand for certainty." *Id.* at 21-22 (majority op.).

Crucially, *Shepard* rejected an alternate, factual approach even where, as was the case in *Shepard* itself, "the records of the prior convictions . . . are in each instance free from any inconsistent, competing evidence on the pivotal issue of fact separating generic from nongeneric burglary." *Id.* at 22. The plurality[15] portion of the opinion in *Shepard* explained that it was "limit[ing] the scope of judicial factfinding on the disputed generic character of a prior plea" in order "to avoid serious risks of unconstitutionality" presented by the need—in light of the intervening decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), discussed in more detail below—for a jury to find "any disputed fact essential to increas[ing] the ceiling of a potential sentence." *Shepard*, 544 U.S. at 25-26.

---

[15]Justice Thomas concurred in all of *Shepard* except its discussion of *Apprendi*. He would have gone further, declaring that in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any judicial factfinding—including that permitted by *Taylor* and *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)—"would not give rise to constitutional doubt . . . . It would give rise to constitutional error." *Shepard*, 544 U.S. at 28 (Thomas, J., concurring).

In short, *Shepard*, like *Taylor*, permits application of the modified categorical approach only when a prior conviction can be said *as a matter of law* to have rested on generic elements found by a jury or admitted by the defendant. No inferences from the factual context are allowed.

**B.**

The majority's fact-based approach, limited though it purports to be, just cannot be squared with *Taylor* or *Shepard*, let alone with *Nijhawan* and *Johnson*.

According to the majority, sentencing courts need not stick to what the trier of fact was legally *required* to find, or the defendant was legally *required* to admit; they are free to determine what must have been found or admitted, in light of the "prosecutorial theory of the case." Bybee op. at 10615. As the majority concedes, its approach authorizes sentencing courts to enhance sentences based on factual inferences concerning the prior conviction.

The majority's own examples show why this formulation flies in the face of *Taylor* and *Shepard*. Positing a hypothetical aggravated assault statute with only one element, harmful contact, the majority asserts that a sentencing court could use the modified categorical approach to find that, "given the facts put forward by the government, the jury was 'required' to find that the defendant used a gun," *id.*, if the record includes "an indictment alleging that the defendant used a gun to inflict harmful contact on a victim from 200 feet away." *Id.* at 51. This allegation alone, we are told, would establish that "the factfinder was actually required to find the facts that satisfy the elements of generic aggravated assault." *Id.*

Again, not so. The majority's example seems to assume that where an indictment alleges a fact not essential to the conviction—like the fact that a gun was used, when the statute is violated by *any* harmful contact—the jury must find that

fact to convict. That's wrong. Although state law may impose additional requirements, the federal constitution requires only that juries agree as to *elements* of the crime, and juries are generally free to disagree as to *means* by which the defendant committed a particular element. *See Richardson*, 526 U.S. at 817 ("[A] federal jury need not always decide unanimously . . . which of several possible means the defendant used to commit an element of the crime."); *Schad*, 501 U.S. at 631-32 (plurality op.); *United States v. Hofus*, 598 F.3d 1171, 1176-77 (9th Cir. 2010) (holding that the jury did not need to agree as to which particular act of the defendant was a "substantial step" toward the commission of a crime sufficient to find the defendant guilty of attempt).

So, to work, the majority's "theory of the case" thesis must depend on an antecedent inference—namely, that *no evidence supporting any other theory of harm was ever presented to or could have been inferred by the factfinder*. And *that* is a question of fact. Consequently, and despite its protestations to the contrary, the majority's approach does permit a factual inquiry—specifically, an inquiry into what the participants in the prior proceeding must have been thinking and doing. What is the standard of proof for this factual inquiry, according to the majority? Apparently, before enhancing a defendant's sentence, the judge need only be "confident" that the factfinder in the prior proceeding was "required" to find a fact that it was not actually required to find. *See* Bybee op. 10615.

The *Shepard* majority in no uncertain terms forbade the majority's fact-lite "theory of the case" approach. *Shepard* recognized the logic underlying that approach:

> If the transcript of a jury trial showed testimony about a building break, one could say that the jury's verdict rested on a finding to that effect. If the trial record showed no evidence of felonious entrance to anything but a building or structure, the odds that the

> offense actually committed was generic burglary would be a turf accountant's dream.

544 U.S. at 22. But *Shepard* was emphatic that despite its common-sense appeal, this fact-based investigation would be "a menace to *Taylor*" and would overstep the "limitation [at] the heart of [that] decision." *Id.* at 22-23.

Indeed, *Taylor* expressly rejected basing any inferences on the "theory or theories of the case" presented to the factfinder:

> In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted generic burglary. Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed generic burglary?

*Taylor*, 495 U.S. at 601. As this passage indicates, *Taylor*'s rule—that the sentencing court can "look only to the fact of conviction and the statutory definition of the prior offense," *id.* at 602—was based on the same practical and constitutional difficulties that the majority holds we can ignore, so long as we do so with "confidence."

*Taylor* and *Shepard*'s square rejection of the majority's "theory of the case" approach is reason enough to cast it away, even if one manages somehow to put aside *Nijhawan* and *Johnson*. But, digging deeper, it becomes apparent that several of the reasons that *Taylor* and *Shepard* gave for rejecting *any* factual approach apply equally to the majority's pur-

portedly modest proposal: The majority's "theory of the case" factual analysis will lead to routine violations of the Sixth Amendment right to trial by jury, as articulated in *Apprendi*; will create massive practical difficulties; and will subject defendants who plead guilty to unfair and unintended consequences.

**1.**

The majority's fact-based approach entirely disregards an underlying, essential premise of *Shepard*—that strict adherence to the *Taylor* rule is required to avoid "serious risks of unconstitutionality" in light of the Sixth Amendment rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Shepard*'s concern was directly put: "If the sentencing court were to conclude, from its own review of the record, that the defendant [who was convicted under a nongeneric burglary statute] actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?" 544 U.S. at 24 (plurality op.) (quoting *Taylor*, 495 U.S. at 601) (alterations in original). The majority's factual approach only exacerbates this concern.

The Sixth and Fourteenth Amendments guarantee the right of criminal defendants to have any fact that increases the statutory maximum sentence submitted to a jury and proved beyond a reasonable doubt.[16] *Apprendi*, 530 U.S. at 490.

---

[16]Aguila-Montes' sentence was increased under the U.S. Sentencing Guidelines on the basis of his prior conviction, but the applicable statutory maximum was not increased by the district court's fact-finding. If the majority had confined its discussion to the Guidelines, therefore, this case would not trigger any Sixth Amendment concern. *See United States v. Booker*, 543 U.S. 220, 232 (2005). But the majority opinion purports to enunciate new standards for the application of the modified categorical approach generally, *see* Bybee op. at 10589 ("[O]ur conclusion . . . will have wide repercussions beyond the limited issue in this case."), and several federal statutes subject to the categorical approach do impose higher maximum penalties upon a finding of a qualifying prior conviction. *See,*

Before *Apprendi*, *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), had held that the fact of recidivism was a sentencing factor, rather than an element, and therefore did not have to be alleged in an indictment or proved to a jury. *See id.* at 226-27. To preserve *Almendarez-Torres*, *Apprendi* retained, albeit with some hesitation, one "narrow exception" to the general Sixth Amendment rule, holding that "the fact of a prior conviction" is not subject to the same constitutional safeguards that apply to other facts that increase a sentencing range. *Apprendi*, 530 U.S. at 490. Accordingly, applications of the modified categorical approach that increase the maximum sentence are permissible under *Apprendi*, but only if the sentencing court confines itself to finding "the fact of a prior conviction." *Id.*

*Apprendi* did not suggest that finding facts *about* a prior conviction was permissible; the exception was limited by its

---

*e.g.*, *United States v. Strickland*, 601 F.3d 963, 967 (9th Cir. 2010) (en banc) (applying 18 U.S.C. § 2252A(b)); United States v. Garcia-Cardenas, 555 F.3d 1049, 1051 (9th Cir. 2009) (8 U.S.C. § 1326(b)); *United States v. Durham*, 464 F.3d 976, 986-87 (9th Cir. 2006) (21 U.S.C. § 844(a)). *Apprendi* constrains the application of the modified categorical approach under those statutes.

Additionally, while the *Apprendi* concern does not apply to all *Taylor* applications, the same federal statutory definitions *do* apply in various contexts, and the Supreme Court has never countenanced affording different meaning to the same words in different contexts. For example, an alien is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (in conjunction with 8 U.S.C. § 1101(a)(43)(F)) if convicted of a "crime of violence," which is defined in 18 U.S.C. § 16(a) to include "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." That same definition appears in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), which provides for enhanced sentences for certain defendants previously convicted of a "violent felony." *See also Leocal*, 543 U.S. at 6-7 (explaining how the term "crime of violence" in 8 U.S.C. § 16, has "been incorporated into a variety of statutory provisions, both criminal and noncriminal" (footnote omitted)).

terms to the fact *of* a prior conviction. Moreover, several aspects of *Apprendi*'s treatment of *Almendarez-Torres* reinforce that this exception, like the modified categorical approach, is indeed "narrow," and meant to remain so. *Id.*

First, *Apprendi* acknowledged that *Almendarez-Torres* is in significant tension with its holding, calling *Almendarez-Torres* "at best an exceptional departure from . . . historic practice" and declaring that "it is arguable that *Almendarez-Torres* was incorrectly decided." *Id.* at 487, 489. Second, *Apprendi* signaled that it only tolerated the continued vitality of *Almendarez-Torres* on its "unique facts," *id.* at 490, where the defendant had conceded that his prior convictions were categorical aggravated felonies. *See Almendarez-Torres*, 523 U.S. at 227. As *Apprendi* explained:

> Both the certainty that procedural safeguards attached to any "fact" of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that "fact" in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact" increasing punishment beyond the maximum of the statutory range.

530 U.S. at 488. Third, by thrice placing in quotation marks the word "fact" in its discussion of the *Almendarez-Torres* exception, *Apprendi* indicated that the fact of a prior conviction is so different in kind from other facts that it can scarcely be so called. *See id.* Criminal convictions are accompanied by sufficient "procedural safeguards" that the fact *of* a prior conviction attains a level of "certainty" that other facts do not, and therefore merits special treatment. *Id.*; *see also Shepard*, 544 U.S. at 21-22 (rejecting the Government's argument that sentencing courts should be permitted to examine police reports "free from any inconsistent, competing evidence on the pivotal issue of fact" because they do not satisfy "*Taylor*'s demand for certainty"); *Wilson v. Knowles*, 638 F.3d 1213,

1215 (9th Cir. 2011) ("It would be unreasonable to read *Apprendi* as allowing a sentencing judge to find the kinds of disputed facts at issue here—such as the extent of the victim's injuries and how the accident occurred. These are not historical, judicially noticeable facts. . . . [and] Wilson did not have any reason to contest these alleged facts when he was convicted in 1993." (citations and footnote omitted)); *United States v. Von Brown*, 417 F.3d 1077, 1079 (9th Cir. 2005) (per curiam) ("[T]he categorical and modified categorical analyses . . . prohibit inquiry into the facts underlying a prior conviction. . . . When [these] approach[es] [are] followed, the categorization of a prior conviction as a 'violent felony' or a 'crime of violence' is a legal question, not a factual question coming within the purview of *Apprendi*, *Blakely*, and *Booker*.").

The majority's approach permits factfinding that goes well beyond *Apprendi*'s "narrow" exception for the "fact of a prior conviction," and so does not meet the "certainty" requirement that justifies the exception. As explained in Part III, the majority extends the *Almendarez-Torres* exception to instances in which the "procedural safeguards" that undergird that exception are flimsy or entirely absent. By doing so, the majority countenances the violation of the Sixth Amendment rights of criminal defendants.

## 2.

As *Taylor* observed, determining from a record of conviction what factual theories and arguments were advanced in the prior proceeding poses a "daunting" practical difficulty. 495 U.S. at 601. In only "some cases" will "the indictment or other charging paper . . . reveal the theory or theories of the case presented to the jury"; other cases would require resort to "the Government's actual proof at trial" to make this determination. *Id*. But because *Shepard* did not include the trial transcript in its list of "records of the convicting court" that are properly considered under the modified categorical

approach, 544 U.S. at 20-23, it may not be consulted. *See also Taylor*, 495 U.S. at 601; *United States v. Espinoza-Morales*, 621 F.3d 1141, 1152 (9th Cir. 2010).

Even in the relatively few cases that go to trial,[17] the record of a prior conviction itself will often present an incomplete or inaccurate picture of what was argued and disputed in the proceeding underlying the conviction. *See Taylor*, 495 U.S. at 601. For example, a charging document may, but may not, outline the prosecution's theory in a manner that contains details that are not essential to the conviction but that fit the federal recidivism statute. When the charging document alleges non-elemental facts, a subsequent jury verdict of guilty does not mean that the jury found those non-elements established. And if the defendant has "overwhelming evidence" to dispute an alleged non-elemental fact, he may have reasonably chosen not to present it to the jury, as it "would have been a waste of time and probably excluded as irrelevant, since [the evidence about that fact] was not an element of the offense for which he was being tried." *Li*, 389 F.3d at 900 (Kozinski, J., concurring).

Additionally, a *defendant's* contrary theory of the case will rarely, if ever, appear from the records of conviction. A question the majority does not address is whether the defendant would be able to introduce his own evidence to show that the

---

[17]According to the Bureau of Justice Statistics, over 95 percent of criminal convictions obtained in United States district courts in 2005 (the most recent year for which statistics are available) were the result of guilty pleas. *See* Mark Motivans, *Federal Justice Statistics*, 2005, Bureau of Just. Stat. Bull. (U.S. Dep't of Justice, Washington, D.C.), Sept. 2008, at 5, *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/fjs05.pdf. Similarly, in 2006, 95 percent of convictions of state-court felony defendants in the seventy-five largest U.S. counties were by guilty plea. *See* Thomas H. Cohen & Tracey Kyckelhahn, *Felony Defendants in Large Urban Counties, 2006*, Bureau of Just. Stat. Bull. (U.S. Dep't of Justice, Washington, D.C.), May 2010, at 11, *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/fdluc06.pdf.

jury could have convicted (or he could have pleaded guilty) on an alternate theory. Due process would likely dictate that he have that opportunity, *see United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.), *amended by* 992 F.2d 1015 (9th Cir. 1993), but this would lead the district court into the very fact-finding *Taylor* sought to avoid. *See Taylor*, 495 U.S. at 601 ("Could the defense present witnesses . . . and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed [the] generic [crime]?"). Even if this opportunity is afforded, however, defendants will nearly always be at a disadvantage vis-a-vis the prosecutor in arguing what theories of the case the jury (or judge) could have accepted. Because defendants have no burden in criminal cases, they never have an obligation to convince anyone of anything, and so may have opted not to introduce *any* evidence into the record. Sentencing courts are thus left to conduct their factual inquiry into what "must have" happened in the prior proceeding based on records that, at best, tell only part of the story.[18]

Moreover, although the majority focuses on convictions after trial, in practice the overwhelming majority of modified

---

[18]This is not the only way in which the majority's approach effectively serves as a one-way ratchet that always favors the government. The Supreme Court has expressly foreclosed the possibility that defendants could introduce evidence demonstrating that their *particular* convictions for crimes that are categorical matches for the generic crime did not fit the essential categorical elements—for example, that though most aggravated assaults involve violence, their particular conviction did not. *See James*, 550 U.S. at 208 ("[The categorical approach does not require] that every conceivable factual offense covered by a statute . . . necessarily present a serious potential risk of injury before the offense can be deemed a violent felony . . . . Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." (citation omitted)). The majority permits sentencing courts to go beyond the elements of the prior crime of conviction in order to expand the crimes qualifying for recidivist enhancements, but under *James*, those same courts may not go beyond the elements when doing so would benefit defendants.

categorical inquiries will consider convictions entered pursuant to a guilty plea, not trial. The "practical difficulties" posed by the majority's approach when applied to guilty pleas are, if anything, more "daunting" than when applied to convictions after trial. *Taylor*, 495 U.S. at 600.

The majority's limited discussion of the vastly prevalent plea context takes off from the premise that "[w]hen a defendant pleads guilty to a count, he admits the factual allegations stated in that count." Bybee op. at 10631. Once more, the majority is wrong.

For decades, our case law has been clear: "We have declined to treat 'guilty pleas as admitting factual allegations in the indictment not essential to the government's proof of the offense.' " *United States v. Forrester*, 616 F.3d 929, 945 (9th Cir. 2010) (quoting *United States v. Cazares,* 121 F.3d 1241, 1247 (9th Cir. 1997)). "Any other rule," *Cazares* explained, "would be inconsistent with the rationale underlying these decisions that '[t]he effect [of a guilty plea] is the same as if [the defendant] had been tried before a jury and had been found guilty on evidence covering all of the material facts.' " 121 F.3d at 1247 (quoting *United States v. Davis*, 452 F.2d 577, 578 (9th Cir. 1971) (per curiam) (all but first alteration in original)). In *Cazares* and *Forrester*, we held that non-elemental facts recited in an indictment and a signed plea agreement are not admitted. *See Forrester*, 616 F.3d at 946; *accord Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 n.3 (9th Cir. 2007) ("[A] plea of guilty admits only the elements of the charge necessary for a conviction."); *United States v. Thomas*, 355 F.3d 1191, 1196-98 (9th Cir. 2004); 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.4(f) n.171 (3d ed. 2007 & Supp. 2010) ("Though there is some authority that a plea of guilty also admits factual allegations in the indictment not essential to the government's proof, the *Cazares* court wisely rejected that view as 'inconsistent with Rule 11.' " (citations omitted)); *see also Bargas v. Burns*, 179 F.3d 1207, 1216 n.6 (9th Cir. 1999) ("We have repeatedly held that lan-

guage [in an indictment] that describes elements beyond what is required under [the] statute is surplusage and need not be proved at trial.").[19]

So, in federal court, a defendant pleading guilty is only required to admit the elements of the offense, including specifying one or another of any alternative elements. Under our cases, then, an attorney advising his client about whether he should attempt to correct erroneous or disputed non-elemental facts contained in a plea agreement or indictment would be perfectly justified in assuring his client that there is simply no need to correct those misstatements of fact. Not only are they by definition irrelevant to guilt or innocence, but they are also not admitted by a guilty plea, standing alone. In this circumstance, there is little to gain by squabbling over irrelevant facts, and perhaps much to lose, such as the prosecutor's goodwill or the sentencing judge's perception that the defendant has accepted responsibility for his actions.[20]

---

[19]The only circumstance in which a defendant pleading guilty admits non-elemental facts is if he does so explicitly during the Rule 11 colloquy. *See Forrester*, 616 F.3d at 946; *Cazares*, 121 F.3d at 1247-48 ("[T]o attribute to a defendant an admission which was never subject to a plea colloquy under Fed. R. Crim. P. 11 would undermine the rule's prophylactic purposes. . . . The appropriate course is . . . for the government at the plea colloquy to seek an explicit admission of any unlawful conduct which it seeks to attribute to the defendant.").

[20]Under the federal Sentencing Guidelines, defendants' recommended sentences are lowered if they "accept responsibility" for their crimes. U.S.S.G. § 3E1.1; *but see United States v. Green*, 346 F. Supp. 2d 259, 271 (D. Mass. 2004) ("Under the Guidelines, an offender is eligible for a discount on his sentence if he 'accepts responsibility' for his crime. Actually, this discount has nothing whatsoever to do with true acceptance of responsibility for one's acts. . . . What we mean by acceptance of responsibility is simply the discount offered for pleading guilty (earlier is better), thus saving the Department [of Justice] the trouble, expense, and uncertainty of a jury trial.") (footnotes omitted), *aff'd in part and vacated in part sub nom.*, *United States v. Yeje-Cabrera*, 426 F.3d 64 (1st Cir. 2005) (vacating in light of *United States v. Booker*, 543 U.S. 220 (2005)).

In state courts—which, of course, handle the majority of criminal prosecutions—whether a guilty plea admits non-elemental facts varies by jurisdiction. *Compare State v. Kappelman*, 986 P.2d 603, 605 (Or. Ct. App. 1999) (holding that defendant's guilty plea "was not an admission of any facts that went beyond the essential elements of the charge") *with Wallace v. State*, 308 S.W.3d 283, 286-87 (Mo. Ct. App. 2010) ("A plea of guilty is an admission as to the facts alleged in the information." (citation and quotation marks omitted)). The majority, despite its purported concern for uniformity, adds an additional layer of *dis*uniformity in the application of the modified categorical approach, contingent on each state's procedural rules regarding whether non-elemental facts are admitted by a guilty plea.

In sum, the majority's inquiry, extending to non-elemental facts, goes beyond asking what the defendant *necessarily* admitted, as *Shepard* commands. Instead, it embarks on a fact-mining inquiry that is without support in federal case law and ignores the procedural niceties applicable in various state courts.

### 3.

Finally, application of the majority's "theory of the case" approach to guilty plea convictions, in particular, bears out "the unfairness of a factual approach." *Taylor*, 495 U.S. at 601.

Defendants often plead, as part of plea "deals" with the prosecution, to less serious crimes than originally charged. *See, e.g.*, *Ellis v. U.S. Dist. Court for the W. Dist. of Wash. (Tacoma)* (*In re* Ellis), 356 F.3d 1198, 1210 (9th Cir. 2004) (en banc) (discussing the factors that go into a prosecutor's decision to offer a plea to a lesser charge, including "allocation of prosecutorial resources, . . . the relative strengths of various cases and charges," and the defendant's particular circumstances (citation and quotation marks omitted)). If the

modified categorical approach can be used to find facts not grounded in the elements of the crime of conviction, a defendant can receive a sentencing enhancement for pleading guilty to a generic crime even when the essence of the plea bargain was the surrender of the defendant's right to a trial by jury in exchange for the assurance that he *would not* be convicted of that generic crime.

*Taylor* recognized this very problem and shaped its non-fact-based approach to prior convictions to avoid it: "Even if the Government were able to prove [facts constituting generic burglary], if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary." *Id.* at 601-02. In other words, *Taylor* said that no matter how "confident" we might be that the defendant had *committed* generic burglary, that does not matter unless he was *convicted* of generic burglary.

As one would expect from the prevalence of pleas to lesser offenses than those originally charged, *Taylor*'s concern was not hypothetical. Before *Navarro-Lopez*, at least one panel of this court concluded that a defendant who pleaded guilty to a lesser included offense was actually convicted of the more serious offense with which he was originally charged. In *United States v. Guerrero-Velasquez*, 434 F.3d 1193 (9th Cir. 2006), Guerrero-Velasquez was originally charged with Washington first-degree burglary, a categorical "burglary of a dwelling," but pleaded guilty to second-degree burglary, "which expressly excludes burglaries of dwellings." *Id.* at 1197 & n.5. Nonetheless, the court held that the guilty plea to second-degree burglary admitted all of the facts in the indictment for first-degree burglary—the crime to which Guerrero-Velasquez did not plead—and accordingly held that Guerrero-Velasquez could be considered convicted of generic burglary for purposes of federal sentencing. *Id.* Needless to say, *Guerrero-Velasquez* was in dramatic conflict with *Taylor*.

The majority's version of the modified categorical approach invites a parade of *Guerrero-Valesquez*es. For example, a defendant charged with willful infliction of corporal injury on a spouse, Cal. Penal Code § 273.5(a), who pleaded guilty only to simple battery, Cal. Penal Code § 242, could be found to have been convicted of the more serious "crime of domestic violence," 8 U.S.C. § 1227(a)(2)(E)(1)(i), and thus ineligible for cancellation of removal, based upon facts recited in a superseding indictment, superseding information, or plea agreement. Or a defendant charged with sexual abuse of a minor, Cal. Penal Code § 261.5(d), who in fact maintained that he engaged in consensual intercourse with his seventeen-year-old girlfriend and thus pleaded guilty only to misdemeanor sexual intercourse with a person under eighteen, Cal. Penal Code § 261.5(b), may nevertheless be found to have admitted to the more serious crime on the same basis.

Such an approach creates the very "potential for unfairness" *Taylor* warned against. 495 U.S. at 601. It provides the government with more than it bargained for, the defendant with less. Put another way, it treats the defendant as having conceded that the government met its burden of proving beyond a reasonable doubt an element essential to the federal recidivism statute when, in fact, the government chose to forego the need for such proof by charging a lesser crime as to which the element did not matter. Not only is this unfair, but it will undoubtedly discourage defendants from pleading guilty. What good is a bargain that a later court might rewrite? The majority increases the chances defendants will go to trial, and the corresponding burden on state and federal trial courts.

In sum, the majority's purported inquiry into what the jury "must have found," Bybee op. at 10613, or what the defendant admitted, *see id.* at 10615, creates the very same "practical difficulties and potential unfairness," *Taylor*, 495 U.S. at 601, that led the Supreme Court to reject any fact-based approach, including the majority's fact-lite approach, in *Taylor* and *Shepard*.

## III.

The crux of the majority's reasoning is that the problems identified above, serious though they may be, cannot require that the modified categorical approach be limited to the divisible statute situation. That limit, according to the majority, would effectively collapse the modified categorical approach into the categorical approach. *See* Bybee op. at 10613-15. The majority's bottom line is that when the Supreme Court instructs us to examine the elements the jury "was actually required to find," *Taylor*, 495 U.S. at 602, or the defendant "necessarily admitted," *Shepard*, 544 U.S. at 26, those instructions cannot mean "as a purely legal matter." Reading precedent that way, the majority claims, would preclude applying the modified categorical approach to divisible statutes, because we can never know, as a purely legal matter, under which of the divisible statute's alternatives the jury convicted. *See id.* at 10614-17. Accordingly, the majority posits, the modified categorical approach cannot be limited to asking what elements were necessarily established as a legal matter. *See id.*

Before explaining the numerous reasons why this assertion is wrong, it is important to be clear that this superfluity premise is *the* lynchpin of the majority's justification for its factual approach. Starting from this erroneous premise, the majority casts about for an alternate meaning for *Taylor*'s "actually required to find," 495 U.S. at 602, and *Shepard*'s "necessarily admitted," 544 U.S. at 26, finally settling on its factual, "theory of the case" approach. *See* Bybee op. at 10615. So if the majority's underlying principle—that we can never know, as a legal matter, which statutory alternative of a divisible statute that a defendant was convicted of violating—is erroneous, its house of cards collapses.

And indeed, the majority's premise is quite wrong. In addition to its misunderstanding of Supreme Court precedent, its unfairness to defendants, and its disruption of the guilty plea

process, the majority's account of how a criminal defendant is convicted under a divisible statute misapprehends several fundamental features of our criminal justice system. The majority also ignores the variability amongst the states as to criminal procedure, even though state courts are the source of most convictions relevant to federal recidivist statutes. Once those errors are straightened out, it becomes apparent that the divisible statute approach *does* leave a role for the modified categorical approach consistent with the one the Supreme Court intended.

## A.

As an initial matter, we should not be surprised to find that the modified categorical approach, correctly applied, is both quite narrow and bears a close resemblance to the formal categorical approach. As the name implies, the modified categorical approach is a *variant* of the categorical approach, not, as the majority would have it, an "exception" to it. Bybee op. at 10618; *see Nijhawan*, 129 S. Ct. at 2298-99 (describing the manner by which a court narrows a crime of conviction by consulting the record of conviction as a "categorical" approach and contrasting it with the "circumstance-specific" approach); *Taylor*, 495 U.S. at 600-02 (explaining that the situation in which a statute of conviction is broader than the generic crime calls for a "categorical approach," not a "factual approach").

True, many criminal statutes are not divisible in the pertinent sense, so the modified categorical approach will not be universally, or perhaps even broadly, available. But that is why, presumably, the Supreme Court has stated from the outset that the approach is available only "in a narrow range of cases." *Id.* at 602; *see also Shepard*, 544 U.S. at 23 n.4 ("*Taylor* is clear that any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes.").

## B.

The majority makes a fundamental error when it asserts that, even in the divisible statute situation, a court could never conclude with regard to a prior conviction that the earlier trier of fact was required as a purely legal matter to find the "precise elements of the generic crime," because a trier of fact is always free to convict the defendant under any statutory alternative, "leaving no room for a modified approach." Bybee op. at 10613-14 (emphasis omitted). In other words, to use the hypothetical posited by the majority, the majority assumes that even if the statute of conviction criminalizes harmful offensive conduct with a gun or an axe, a sentencing court would *never* be able to ascertain whether a jury's verdict or guilty plea was predicated on the use of a gun or an axe, because the trier of fact would have been free to convict on either of the two statutory alternatives. *See id.* at 10614-15.

But—still one more time—the majority is wrong. In reality, procedural safeguards governing charging documents prevent a prosecutor from charging a defendant, under the majority's hypothetical aggravated assault statute, with "the use of a gun or an axe." As will be explained, the application of the various procedural safeguards is complex, and the outer limits are not always clear. Moreover, there is remarkable heterogeneity amongst the states. However, when taken together, the upshot is that the situation underlying the majority's entire argument will rarely, if ever, occur. Moreover, while the majority completely ignores all of this nuance, sentencing courts will not have that luxury, as applying the majority's approach will require them to master each state's law of criminal procedure.

The constitutional principle that sets the outer boundaries for permissible prosecutorial pleading is the Sixth Amendment's guarantee to all criminal defendants of the right "to be informed of the nature and cause of the accusation." *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *Russell v. United States*, 369 U.S. 749, 768-69 (1962); *United States v.*

*Kurka*, 818 F.2d 1427, 1431 (9th Cir. 1987). This requirement means, among other things, that a legally-sufficient charging document "must state the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against." *United States v. Christopher*, 700 F.2d 1253, 1257 (9th Cir. 1983). Thus, charging a defendant in the disjunctive —"the use of a gun or an axe"—is generally prohibited, for doing so lacks the requisite clarity. *See Confiscation Cases*, 87 U.S. 92, 104 (1874) ("[A]n indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offenses, would be destitute of the necessary certainty, and would be wholly insufficient. . . . [because] [i]t would not give the accused definite notice of the offense charged, and thus enable him to defend himself, and [because] neither a conviction nor an acquittal could be pleaded in bar to a subsequent prosecution for one of the several offenses."); 5 LaFave et al., *supra*, § 19.3(a) ("[W]here a statute specifies several different ways in which the crime can be committed, [state courts] hold that the pleading must refer to the particular alternative presented in the individual case."); 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure: Criminal* § 125 (4th ed. 2008) ("[I]f the pleading alleges several acts in the disjunctive, it fails to give the defendant notice of the acts he allegedly committed and should be found insufficient."). For this reason alone, the majority's premise that an indictment or information ever would charge a defendant with "the use of a gun or an axe" assumes a reckless prosecutor and denial of the due process challenge likely to follow such charge.[21]

Instead, a prosecutor has a choice: First, he can charge the "use of a gun" *or* "the use of an axe," but not both. If he charges in this manner, that choice will be evident from the

---

[21]Even an allegation that the defendant "used a gun *and/or* an axe" would likely be found duplicitous, *see, e.g.*, *People v. Bauman*, 905 N.E.2d 1164, 1165 (N.Y. 2009), a concept discussed later.

charging document itself, illustrating the reason why *Shepard* permits a later sentencing court to consult the indictment or information to determine the provision of a divisible statute under which the defendant was convicted. *See Shepard*, 544 U.S. at 26. More to the point, the jury will have necessarily found, as a purely legal matter, *either* that the defendant used a gun *or* that he used an axe.[22]

The law regarding variances between the charging document's allegations and the proof at trial will generally prevent the prosecutor from deviating from this choice, at least absent a formal amendment to the charging document—which, of course, should be evident to a later sentencing court. *See Berger v. United States*, 295 U.S. 78, 82 (1935) (setting forth the general test for assessing variances); 5 LaFave et al., *supra*, § 19.6(b) & n.10 (describing Berger as "the most frequently cited analysis of the law governing variances").[23]

---

[22]It is this legal certainty that makes the following statement from the majority incorrect:

> [T]he same reasons that motivate Judge Berzon to express confidence in the modified categorical approach in divisible statute cases suggest that we should have similar confidence in applying it to broad and missing element cases, so long as we are relying on the documents approved in *Shepard*. It is unclear why, according to Judge Berzon, these conviction records are unreliable when the conviction rests on a missing element statute, yet are perfectly reliable in determining under which part of a divisible statute a defendant was convicted.

Bybee op. at 10614 n.18. It is not that the conviction records are not "reliable" in the broad element or missing element statute—it's that they aren't *useful*, because they do not (and cannot) demonstrate that the factfinder was "actually required to find," as a legal matter, the elements of the generic crime. *Taylor*, 495 U.S. at 602. *See United States v. Lewis*, 405 F.3d 511, 515 (7th Cir. 2005) ("The list in *Shepard* is designed to identify documents that illuminate *what crime* the defendant committed . . . . What matters is the fact *of* conviction, rather than the facts *behind* the conviction.") (Easterbrook, J.).

[23]Application of the informal (or "constructive") amendment doctrine varies a great deal amongst jurisdictions, but courts are generally consis-

Alternatively, and assuming that the statute does not set forth separate offenses but only separate *means* of committing the same offense—an important assumption examined below —the prosecutor may permissibly charge "the use of a gun *and* an axe," so long as the defendant has sufficient notice, consistent with the Sixth Amendment, of the charges he actually faces. *See Turner v. United States*, 396 U.S. 398, 420 (1970); *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009); *People v. Moussabeck*, 68 Cal. Rptr. 3d 877, 881-82 (Cal. Ct. App. 2007). If the prosecutor chooses this charging avenue, consultation of the charging document alone will not reveal the statutory alternative of which the defendant was actually convicted. Instead, a later sentencing court will need to examine the jury instructions or the plea colloquy to ascertain the basis of the conviction.[24] *See Shepard*, 544 U.S. at 26.

---

tent in finding a variance when the discrepancy between the indictment and the proof effects a shift from one statutory alternative to another—that is, in the divisible statute situation. For example, in *Gray v. Raines*, 662 F.2d 569 (9th Cir. 1981), we considered the claim of a defendant convicted of statutory rape under former Ariz. Rev. Stat. § 13-611(B), covering statutory rape, when the information alleged only forcible rape under § 13-611(A). Although the Arizona courts had held that § 13-611 "merely stat[ed] the different circumstances under which sexual intercourse constitutes the crime of rape," *Raines*, 662 F.2d at 571 (citation and quotation marks omitted), we held that the pivot from one statutory alternative to another violated the Sixth Amendment because statutory rape was not a lesser included offense of forcible rape. *Id.* at 573; *see also, e.g.*, *United States v. Figueroa*, 666 F.2d 1375, 1379-80 (11th Cir. 1982) (reversing a conviction where the indictment alleged actual force, but the defendant was convicted for seizing an aircraft by threat of force); *United States v. Bizzard*, 615 F.2d 1080, 1081-82 (5th Cir. 1980) (reversing a conviction when the indictment alleged that the defendant had put two bank tellers' lives in jeopardy, but the proof and jury instructions required merely an assault). Thus, a constructive amendment of the charging document that prevents a later court from determining the precise elements a jury was required to find is least likely in the divisible statute situation.

[24]If neither the charging document nor the jury instructions/plea colloquy establish the statutory alternative under which the defendant was convicted, the inquiry under the modified categorical approach is, as *Shepard* and subsequent cases instruct, at an end. *See Johnson*, 130 S. Ct. at 1273

There is a further limit on the prosecutor's discretion to charge an offense that may be committed by one or more acts set forth in the statute in the disjunctive: The statute's use of the disjunctive "or" must merely describe different *means* of committing a single offense, rather than describing different *offenses*. The Sixth Amendment's notice requirement and the Fifth Amendment's protection against double jeopardy prohibit charging documents from containing duplicitous counts —"the joining in a single count of two or more distinct and separate offenses." *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976); *see also id.* ("One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence, including its admissibility against one or more codefendants."). To avoid duplicity, trial courts have to determine when a statute sets forth separate offenses and when it merely proscribes various means of committing a single offense.

---

("But absence of records will often frustrate application of the modified categorical approach . . . ."). The sentencing court would then be unable to determine from those documents that the trier of fact "necessarily found" all the elements narrowing the crime of conviction to the generic crime. That is because juries need not agree "which of several possible sets of underlying brute facts make up a particular element." As explained in *Richardson*:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force.

526 U.S. at 817; *accord Schad*, 501 U.S. at 631.

Traditionally, there has been no bright-line rule distinguishing one circumstance from the other. *See, e.g.*, *id.* at 835-38 (listing four factors to evaluate); *cf. Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.").[25] But now, to account for *Apprendi*, offenses *must* be considered separate ones if convictions under the various statutory alternatives subject the defendant to different maximum sentences. *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 111 (2003) ("[I]f the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact—no matter how the State labels it—constitutes an element and must be found by a jury beyond a reasonable doubt."). So, if a conviction under the majority's hypothetical aggravated assault statute punishes convictions involving the "use of a gun" more harshly than those involving the "use of an axe," whether the defendant used a gun or an axe is an element that must be included in the charging document and found by the jury beyond a reasonable doubt.

---

[25]Many states apply the *Blockberger* test to measure whether the prosecution's proof or the jury instructions create impermissible variance from the charging document. *See, e.g.*, *Bell v. State*, 757 S.W.2d 937, 942 (Ark. 1988); *People v. Jefferson*, 934 P.2d 870, 872 (Colo. Ct. App. 1996); *State v. Matautia*, 912 P.2d 573, 578 (Haw. Ct. App. 1996); *Commonwealth v. Souza*, 675 N.E.2d 432, 437 (Mass. App. Ct. 1997); *Thanos v. State*, 387 A.2d 286, 290 (Md. 1978); *State v. Reed*, 737 N.W.2d 572, 580-81 (Minn. 2007); *Wolfe v. State*, 743 So. 2d 380, 384 (Miss. 1999); *State v. Brown*, 560 P.2d 533, 535-36 (Mont. 1976); *State v. Erickson*, 533 A.2d 23, 25 (N.H. 1987); *State v. Woody*, 505 N.E.2d 646, 646-47 (Ohio Ct. App. 1986); *Commonwealth v. Brown*, 727 A.2d 541, 544 (Pa. 1999); *State v. Markle*, 823 P.2d 1101, 1105-06 (Wash. 1992); *but see State v. Matson*, 921 P.2d 790, 796 (Kan. 1996); *State v. Noltie*, 809 P.2d 190, 197 (Wash. 1991); *see generally* 5 LaFave et al., *supra*, § 19.6(b). Additionally, many state courts hold that when a defendant is convicted under a statutory alternative different from that alleged, the conviction is invalid. *See, e.g.*, *Fleming v. State*, 814 So. 2d 310, 311 (Ala. Crim. App. 2001); *State v. Mencer*, 798 S.W.2d 543, 546 (Tenn. Crim. App. 1990).

*See Hamling*, 418 U.S. at 117 (holding that all elements must be includ in an indictment); *United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005) (per curiam) (holding that the failure to allege an essential element can lead to the overturning of a conviction upon a timely objection, even without a showing of prejudice), *cert. denied*, 549 U.S. 1174 (2007); *see also United States v. Inzunza*, 580 F.3d 894, 903 (9th Cir. 2009).

Nonetheless, there will likely be circumstances involving divisible statutes in which the charging document does not demonstrate that the factfinder necessarily found all the elements of the generic crime. One possible circumstance, already described, is when the prosecutor charges "the use of a gun and an axe"—which, as described, is only permissible if: (a) the use of a gun subjects the defendant to the exact same possible sentence as the use of an axe; (b) the statute's gun/axe division merely describes different means of committing one offense, rather than two separate offenses; and (c) the defendant is provided sufficient notice of the accusations against him. Another, more likely, possibility is when there is a permissible variance between the allegations in the charging document and the subsequent proof. *See United States v. Hartz*, 458 F.3d 1011, 1021 (9th Cir. 2006) (discussing how a variance between the indictment and the proof is permissible so long as it is not about "an essential element" of the crime charged and "does not alter the behavior for which the defendant can be convicted"). In either situation, resort to the jury instructions or the plea colloquy can assist the sentencing court in determining what elements the defendant "necessarily admitted," *Shepard*, 544 U.S. at 26, or the jury was "actually required to find," *Taylor*, 495 U.S. at 602.

In particular, in federal court, Rule 11 polices the integrity of guilty pleas by requiring that the district court, "[b]efore entering judgment on a guilty plea, . . . determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). Courts interpreting Rule 11 have made clear that the essential elements of the crimes admitted must be addressed in a veri-

fied "factual basis." *United States v. Alber*, 56 F.3d 1106, 1110 (9th Cir. 1995) ("Rule 11(f) [now Rule 11(b)(3)] requires the district court to satisfy itself that there is a factual basis for all elements of the offense charged before accepting a guilty plea."). District courts in this circuit adhere to the same practice. *See*, *e.g.*, *United States v. McTiernan*, 546 F.3d 1160, 1164 (9th Cir. 2008); *United States v. Vance*, 62 F.3d 1152, 1158 (9th Cir. 1995). Many states require similar procedures for a valid guilty plea. *See generally* 5 LaFave et al., *supra*, § 21.4(f).

The record of the Rule 11 proceedings may enable a sentencing court to assure itself that the defendant was "actually required," as a purely legal matter, to admit sufficient facts to support the elements of the crime—including, for example (and returning to our hypothetical divisible statute once more), that the defendant used either a gun or an axe in the assault. Here again, while it is *possible* that the judge would ask merely whether the defendant used "a gun or an axe," it is surely unlikely that the judge would leave it at that. And, for the reasons explained above, if the statutory alternatives are punished differently, *Apprendi requires* that the judge ensure that there is a factual basis for any statutory alternative that would increase the defendant's possible maximum sentence. *See Sattazahn*, 537 U.S. at 111.

The majority's supposition that the trier of fact is never required, as a purely legal matter, to convict under any particular statutory alternative is perhaps most puzzling in light of the manner in which juries are typically instructed. Usually, trial judges instruct the jury on the elements of the crime, and "a failure to charge each of the elements may constitute cognizable error on appeal even where the defense failed to object." 6 LaFave et al., *supra*, § 24.8(c). Judges are called upon to craft their instructions in light of the charges and the proof at trial. *See United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010); *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999). Because "in all cases, juries are

presumed to follow the court's instructions," *CSX Transp., Inc. v. Hensley*, 129 S. Ct. 2139, 2141 (2009), the modified categorical approach is often available to determine that a conviction covered all the elements of a generic crime when the jury instructions narrow the charge to a particular statutory alternative.

In sum, there are several procedural safeguards—rooted primarily in the Fifth and Sixth Amendments—that apply to charging documents, plea colloquies, and jury instructions. These safeguards can assist the sentencing judge in a later proceeding in determining, with regard to divisible statutes, whether the trier of fact in a prior proceeding "necessarily found," or the defendant "necessarily admitted"—as a purely legal matter—all of the elements of the generic crime, without having to engage in the sort of factfinding that the majority permits (and which *Taylor* and *Shepard* prohibit). Moreover, these procedural safeguards demonstrate why the majority's contention that limiting the modified categorical approach to divisible statutes adds nothing to the categorical approach is incorrect.

## IV.

The short of the matter is this: The Supreme Court has made abundantly clear that the modified categorical approach is employed only to determine under which statutory phrase the defendant was convicted in a prior proceeding. Every circuit to address the issue now agrees. To hold otherwise, even if we could, would create a myriad of practical and constitutional problems, as well as problems of basic fairness to criminal defendants.

So why does the majority strain to conclude otherwise? The majority's primary concern is that confining the modified categorical approach to divisible statutes "makes [whether] a defendant [is] subject to a sentence enhancement turn entirely on the location in which he committed the prior offense,"

which the majority claims is "the precise outcome that *Taylor* sought to avoid in establishing a uniform definition of burglary." Bybee op. at 10626 n.19.

This objection is both jurisprudentially inaccurate and practically wrong. First off, it takes *Taylor*'s uniformity discussion out of context, ignoring its simultaneous, explicit limitation on the circumstances in which the categorical approach may be modified, though not abandoned. In other words, *Taylor* was concerned about uniformity, but not to the unmitigated degree that the majority asserts.

*Taylor* invoked the uniformity concern to explain why it adopted a "uniform definition" of burglary "independent of the labels employed by the various States' criminal codes." 495 U.S. at 592. The articulated concern was that some defendants would receive sentencing enhancements based on convictions for conduct, such as burglarizing an automobile, that Congress could not have meant to encompass with its designation of "burglary" as a conviction qualifying a defendant for an enhancement under 18 U.S.C. § 924(e). *See Taylor*, 495 U.S. at 591-92. So yes, uniformity was *a* concern in *Taylor*.

Still, *Taylor* self-consciously chose a definition of generic burglary that excludes certain states' statutes (like California's) from counting as a qualifying conviction. *See id.* It also squarely, and emphatically, rejected the notion that, when faced with a conviction that did not meet the generic definition of burglary, the sentencing court could nonetheless look to the defendant's actual conduct to see if it "would fit the generic definition of burglary." *Id.* at 601. The Court was fully aware of the fact that this approach would not achieve full uniformity based on a defendant's past conduct. Nonetheless, as *Taylor* explained, this underinclusiveness was necessary because of the "practical difficulties and potential unfairness" of any other approach. *Id.*

In subsequent cases, the Supreme Court has repeatedly refused to expand the modified categorical approach even when faced with the majority's overweening concern—that it could lead to sentencing disparities based on the state in which a particular defendant was convicted. As the Court has explained, uniformity, while an important value, is not the only value at stake here. That is why *Shepard* rejected the Government's argument "for a more inclusive standard of competent evidence," which was based on "the virtue of a nationwide application of a federal statute unaffected by idiosyncrasies of record keeping in any particular State." 544 U.S. at 22. "[R]espect for congressional intent and avoidance of collateral trials," *Shepard* concluded, "require that evidence of generic conviction be confined to records of the convicting court approaching the certainty of the record of conviction in a generic crime State." *Id.* at 23; *see also James*, 550 U.S. at 204-05 & nn.3-4 (acknowledging that the overbreadth of some states' attempted burglary statutes means that convictions thereunder have been held not to qualify as "violent felon[ies]" under the Armed Career Criminal Act (ACCA)); *United States v. Rodriquez*, 553 U.S. 377, 398 (2008) (Souter, J., dissenting) (pointing out that the majority's holding—that the ACCA's sentence enhancement provision, under which a state drug-trafficking conviction qualifies as a "serious drug offense" if the "maximum term of imprisonment prescribed by law" was at least 10 years, includes any penalty imposed under the state's recidivist statute—will lead to "vast disparities" depending on the state where the defendant was convicted); *Johnson*, 130 S. Ct. at 1273 ("It may well be true, as the Government contends, that in many cases state and local records from battery convictions will be incomplete. But absence of records will often frustrate application of the modified categorical approach—not just to battery but to many other crimes as well.").

Secondly, the lack of uniformity the majority decries assumes that the mismatch between state and federal law with which we are currently struggling—and with which the

Supreme Court has also struggled over the last two decades—is set in stone. It is not. As *Shepard* pointed out, Congress is free to modify federal law to better reflect variations in state law—for example, by adding privileged entries to the generic definition of burglary, or by altering the categorical approach. *See Shepard*, 544 U.S. at 23 ("In this instance, time has enhanced even the usual precedential force, nearly 15 years having passed since *Taylor* came down, without any action by Congress to modify the statute as subject to our understanding that it allowed only a restricted look beyond the record of conviction under a nongeneric statute."). *Nijhawan* demonstrated that Congress can by appropriate drafting take a statute out of the categorical approach entirely, in which case courts are free to look to the underlying facts of the prior crime of conviction (although, depending on the context, with possible procedural consequences in light of *Apprendi*). *See Nijhawan*, 129 S. Ct. at 2298-99.

States, too, are free to amend their criminal codes to better match the generic definitions contained in the federal recidivist statutes. If California, for example, is concerned that a conviction under its burglary statute will not qualify for a federal recidivist enhancement, it could remove certain offenses, like shoplifting, from its burglary statute.[26] But it is not our role to bend precedent until it breaks simply because we do not like the outcome.

Finally, federal officials can encourage states to alter their prosecutorial practices—for example, to encourage fewer *Alford* pleas, *see North Carolina v. Alford*, 400 U.S. 25 (1970), which have complicated application of the modified

---

[26]The majority's assertion that the states have no incentive to amend their statutes to better match federal recidivist statutes is unconvincing. *See* Bybee op. at 10621 n.20. Congress and state legislatures have concentric constituencies; insofar as Congress has decided that longer sentences for repeat offenders is warranted, one would expect that at least a substantial number of state legislatures would agree.

categorical approach in other circuits. *See, e.g.*, *United States v. Savage*, 542 F.3d 959, 967 (2d Cir. 2008) (holding that because defendant's prior conviction was pursuant to an *Alford* plea, in which he did not admit the factual basis of the crime, that conviction under a divisible Connecticut statute broader than the generic federal definition could not be sufficiently narrowed to assure the sentencing court that it necessarily rested on the elements of the generic crime).

## V.

The application of the majority's theory to the facts of this case illustrate the theory's flaws: Although Aguila-Montes pleaded guilty to "unlawfully enter[ing] an inhabited dwelling," neither Judge Bybee nor Judge Rawlinson endeavor to explain how the (non-elemental) fact that Aguila-Montes allegedly entered the dwelling "unlawfully," in the generic sense, could ever be "necessary" to his conviction. *See* Bybee op. at 10617 ("It is not enough that an indictment [from the prior conviction] merely allege a certain fact or that the defendant admit to a fact; the fact must be *necessary* to convicting that defendant.").

I cannot join in the adventure sanctioned by the majority. I therefore concur only in the overruling of *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 857-58 (9th Cir. 2005), and our other cases that held that a conviction under California Penal Code § 459 qualifies as generic burglary if the defendant pleaded guilty to entering the building "unlawfully" or if a jury found the defendant guilty as charged in an indictment that recited that allegation. *See* Bybee op. at 10631 (listing cases). I agree with Judge Bybee's understanding that under California law, alleging "unlawful" entry does not meet the generic burglary offense. As Judge Bybee explains—but Judge Rawlinson ignores—the California concept of "unlawful" is much broader than the generic concept of "unlawful or unprivileged." The California concept includes entry into a building open to the public or as to which one has consent to

enter, so long as one does so with the intent to commit a felony therein.

But on my view of the overall limitations on use of the modified categorical approach, *Rodriguez-Rodriguez* was wrongly decided even aside from the categorical mismatch, simply because the allegation that the defendant entered the building "unlawfully," in the generic sense, is not an element of the crime of conviction, either exclusively or in the alternative. When a California prosecutor charges a defendant with burglary and alleges that he entered the building in question "unlawfully," that allegation can be read to mean one of two things: First, it could be simply a shorthand repetition of the allegations that the defendant entered the building with the intent to commit a felony therein. Second, it could be alleging the *absence* of an affirmative defense that would otherwise make the entry "lawful" (in the sense that the California courts use that word). *See Sherow*, 2011 WL 2536447, at *8 ("Case law establishes that the lack of consent to enter the building at issue is *not* an element of burglary." (citations omitted)). But either way we read California's allegation that an entry was "unlawful," as Judge Bybee acknowledges, "the word 'unlawfully' in [a California] indictment tells us nothing about whether [a defendant's] entry was 'unlawful or unprivileged' in the generic sense."[27] Bybee op. at 10631.

---

[27]Judge Rawlinson professes to be "puzzled" by the assertion that "unlawful entry is not an element of burglary under California law," stating that "California law is expressly to the contrary." Rawlinson op. at 10696. But her contention is just a play on words. When used in the generic sense, an "unlawful" entry is one that it is trespassory. In the California burglary context, however, "unlawful" just means that the defendant entered with a "larcenous or felonious intent." *See generally* B.E. Witkin, 2 *Witkin Cal. Crim. Law Crimes—Property* § 123 (3d ed. 2010). Of course, it's the meaning, not the label, that matters. *See United States v. Bowen*, 527 F.3d 1065, 1077 n.9 (10th Cir. 2008) ("Abraham Lincoln once posed the following riddle: 'How many legs does a dog have if you call the tail a leg?' The answer is, of course, 'four' because 'calling a tail a leg doesn't make it a leg.' ").

I would hold, therefore, that Aguila-Montes' burglary conviction cannot be used to enhance his sentence because the California burglary statute's "entry" element does not require an unlawful entry, in the sense that term is used to define generic burglary—that is, an entry in which the premises are not open to the public and the person does not have a privilege or invitation to enter. *See* Bybee op. at 10628-29. Accordingly, a jury is *never* "actually required" to find that a defendant's entry was unlawful, *Taylor*, 495 U.S. at 602; nor does a defendant pleading guilty *ever* "necessarily admit[ ]" that he entered unlawfully. *Shepard*, 544 U.S. at 16. The district court therefore erred in enhancing Aguila-Montes' sentence under U.S.S.G. § 2L1.2.

## CONCLUSION

The majority wanders well beyond the confines of the Supreme Court's abundantly clear and narrow modification of the categorical approach and thereby subjects criminal defendants to enhanced punishment on the basis of impermissible and unreliable judicial factfinding. It does so on ephemeral grounds whose validity evaporate upon inspection. For all the reasons surveyed, I would hold, as has the Supreme Court and every other circuit, that only elements of a crime, as defined in the predicate offense statute, are pertinent to the modified categorical approach.

---

RAWLINSON, Circuit Judge, concurring in part and dissenting in part, joined by Judges SILVERMAN, GOULD and CALLAHAN:

I agree with and join Parts I-IV of the majority opinion explaining why we should reverse our prior ruling in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc). However, I respectfully dissent from the balance of

the opinion applying the modified categorical approach to the facts of this case.

Although the majority opinion overrules *Navarro-Lopez*'s rule regarding our inability to apply the modified categorical approach when a state statute is missing an element of a generic offense, it effectively re-imposes the same missing element rule in applying the modified categorical approach to the facts of this case. According to the en banc opinion, use of the modified categorical approach is precluded if applicable state law contains nuances that differ from the generic definition of the crime. However, Supreme Court precedent does not mandate or counsel such a restrictive approach.

In *Taylor v. United States*, 495 U.S. 575 (1990), the United States Supreme Court articulated the important goals underlying enhanced sentences for burglary. Congress' efforts to address the severe problems presented by repeat offenders were "intended to supplement the States' law enforcement efforts against career criminals," because "a large percentage of crimes of theft and violence are committed by a very small percentage of repeat offenders, and that robbery and burglary are the crimes most frequently committed by these career criminals." *Id.* at 581 (citations and internal quotation marks omitted). "[B]urglary was included because it is one of the most common violent street crimes, and while burglary is sometimes viewed as a non-violent crime, its character can change rapidly, depending on the fortuitous presence of the occupants of the home when the burglar enters, or their arrival while he is still on the premises." *Id.* (citation, alteration, and internal quotation marks omitted).

These same concerns mirror California's rationale for treating burglary as a particularly serious felony. "The proscription against residential burglary is designed not so much to deter trespass and the intended crime but to prevent risk of physical harm to others that arises upon the unauthorized entry itself." *People v. Johnson*, 150 Cal.App.4th 1467, 1476

(2007), *as modified* (citation and alteration omitted). California's efforts at deterrence are completely understandable, as California faces exceptionally high rates of burglary. Indeed, there were over 200,000 burglaries in each year between 2001 and 2006. *See* Burglary Crimes, 2001-2006, available at http://ag.ca.gov/cjsc/statisticsdatatabs/dtabscrims.php# burglary (last visited Feb. 11, 2011).

Against the backdrop of the Supreme Court's articulated intent to uphold enhanced sentences for those convicted of the crime of residential burglary, we should proceed with caution before completely excluding a burglary conviction from that equation. In *Taylor*, the Supreme Court reminded us that:

> Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.

*Taylor*, 495 U.S. at 598 (citations and footnote reference omitted). The Supreme Court further observed:

> This usage *approximates that adopted by the drafters of the Model Penal Code*: A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

*Id.* at 598 n.8 (citation and internal quotation marks omitted) (emphasis added). The Supreme Court confirmed that:

> a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged

entry into, or remaining in, a building or structure, with intent to commit a crime.

*Id.* at 599.

It is undisputed that the California burglary statute is broader than the generic definition of burglary.[1] However, when a defendant "has been convicted under a nongeneric-burglary statute," the Supreme Court instructs us that the sentence enhancement may nevertheless be applied if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602. The Supreme Court, therefore, expressly adopted the modified categorical approach as a proper means for ascertaining whether a defendant was convicted of generic burglary. The Supreme Court explained:

For example, in a State whose burglary statutes include entry of an automobile as well as a building,

---

[1] California Penal Code § 459 provides:

Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises.

if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.* at 602.

In *Shepard v. United States*, 544 U.S. 13, 16 (2005), the Supreme Court questioned whether the modified categorical approach identified in *Taylor* could be utilized in cases involving a guilty plea. Answering that question in the affirmative, the Supreme Court observed that "[t]he *Taylor* Court drew a *pragmatic conclusion* about the best way to identify generic convictions in jury cases, while respecting Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction." *Id.* at 20 (emphasis added). Drawing a parallel to *Taylor*, the Supreme Court explained that a guilty plea could support a sentence enhancement pursuant to the Armed Career Criminal Act (ACCA) if the "prior conviction necessarily involved (and a prior plea necessarily admitted) facts equating to generic burglary." *Id.* at 24.

Despite the pragmatic approach described and approved in *Taylor* and *Shepard*, the majority opinion adopts an unyielding analysis premised on nuances of California law. Specifically, the majority opinion takes the view that "it is not so much that California burglary law *lacks* the requirement of unlawful or unprivileged entry; it simply contains a nuanced definition of 'unlawful or unprivileged' different from the common law definition." *Majority Opinion*, p. 10626 (emphasis in the original). The majority's view simply ignores the fact that California's burglary statute "retains two important aspects of common law burglary: the entry must invade a possessory right in the building and it must be committed by one who has no right to be in the building." *People v. Gill*, 159

Cal.App.4th 149, 158-59 (2008) (citation and internal quotation marks omitted); *see also People v. Glazier*, 186 Cal.App.4th 1151, 1158 (2010) ("[T]he fundamental purpose of the burglary statute remains the protection of an occupant's possessory interest in the safe habitation of a building. A burglary remains an entry which invades a possessory right in a building. . . . And it still must be committed by a person who has no right to be in the building[.]") (citations, parentheses and internal quotation marks omitted).

Notwithstanding that California's burglary statute expressly retains the basic elements of generic burglary, the en banc opinion relies on nuances in California case authority to support its premise that the charges against Aguila "tell[ ] us nothing about whether [Aguila's] entry was 'unlawful or unprivileged' in the generic sense." *Majority Opinion*, p. 10631. However, the nuances identified in the majority opinion are associated with the contours of the potential defenses available to defendants who are licensed or privileged to enter a building, rather than with the elements of a burglary offense. *See, e.g.*, *Gill*, 159 Cal.App.4th at 159 ("Because the crime of burglary requires the invasion of a possessory right in a building, one cannot be found guilty of burglarizing one's own residence.") (citation omitted); *see also People v. Ulloa*, 180 Cal.App.4th 601, 606-607 (2009) (recognizing the existence of a possessory interest as a potential defense). Indeed, California law expressly disavows the notion that the lack of a privileged entry is an element of burglary. *See People v. Felix*, 23 Cal.App.4th 1385, 1397 (1994) ("Lack of consent-*by itself*-is *not* an element of the offense. . . . There are occasions when consent given by the owner of the property will constitute *a defense to a burglary charge*. For instance, when the accused *is* the owner of the property or when the owner *actively* invites the accused to enter, *knowing* the illegal, felonious intention in the mind of the invitee. [sic]") (citations, footnote reference and internal quotation marks omitted) (third emphasis added).

California is not alone in treating a licensed or privileged entry as a *defense* to burglary rather than as an element of the crime. For example, in *Pennsylvania v. Majeed*, 548 Pa. 48, 52 (1997), the Pennsylvania Supreme Court observed:

> The Crimes Code provides: A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, *unless the premises are at the time open to the public or the actor is licensed or privileged to enter*. Pursuant to this section, a person who is licensed or privileged to enter does not commit burglary although he or she intends to commit a crime within the premises. Although the statute does not define 'licensed or privileged to enter,' *the statutory defense to burglary* does not depend on ownership.

*Id.* at 52 (citations and footnote reference omitted) (last emphasis added); *see also State v. Grimes*, 92 Wash.App. 973, 980 (1998) (rejecting the defendant's proffered jury instruction in a burglary trial, premised on the defense that the defendant was licensed to enter the residence); *Colbert v. State*, 49 So.3d 819, 821 (Fla. Dist. Ct. App. 2010) ("Section 810.02(1)(b) 1., Florida Statutes (2006), defines burglary as: Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter. If a defendant can establish that the premises were open to the public, then this is a *complete* defense to burglary.") (citation, alterations, and internal quotation marks omitted) (emphasis in the original); *Gray v. State*, 163 Ga.App. 720, 721 (1982) ("Code Ann. § 26-1601 defines burglary as entering or remaining inside a building without authority and with the intent to commit a felony of theft therein. Therefore, *only an authorized entry into the building would be an affirmative defense* or, as pointed out in the prior

opinion, mistake of fact.") (citations and internal quotation marks omitted) (emphasis added).

Until today, we have not factored in varying defenses when performing the modified categorical analysis. *See, e.g.*, *United States v. Velasco-Medina*, 305 F.3d 839, 851-52 (9th Cir. 2002); *see also Aguilar-Turcios v. Holder*, 582 F.3d 1093, 1105 (9th Cir. 2009) (describing the modified categorical analysis with absolutely no reference to potential defenses). However, the majority opinion now relies on a hypothetical defense from the Model Penal Code Commentaries to transform the modified categorical approach into a virtual checkmate of the burglary enhancement.

The Model Penal Code Commentary to Section 221.1 contains the following explication:

> At least this much of the [common law] concept of 'breaking' should be retained in order to exclude from burglary situations such as the following: a servant enters his employer's house as he normally is privileged to do, intending on the occasion to steal some silver; a shoplifter enters a department store during business hours to steal from the counters; a litigant enters the courthouse with intent to commit perjury; a fireman called on to put out a fire resolves, as he breaks down the door of the burning house, to misappropriate some of the householder's belongings. Such situations involve no surreptitious intrusion, no element of aggravation of the crime that the actor proposes to carry out . . .

*Model Penal Code Commentaries*, The American Law Institute, 69 (1980).[2]

---

[2]We note that the charge of residential burglary does not implicate the Model Penal Code's hypotheticals concerning entry into a business, shoplifting, or non-larceny offenses.

Although California courts have permitted a defense to burglary based on a privileged or licensed entry, as the en banc opinion acknowledges, the California statute does not lack the unlawful or unprivileged element of generic burglary. *See Majority Opinion*, p. 10626. Rather our colleagues in the majority summarily contend that the "nuanced definition of unlawful or unprivileged" is sufficiently different from the generic definition of burglary to prevent application of the modified categorical approach unless the examined documents explained how the defendant's "entry was unlawful or unprivileged in the generic sense." *Id.*, pp. 10626, 10631 (internal quotation marks omitted).

In contrast to the majority's approach, the Supreme Court has articulated that *Taylor* "drew a *pragmatic* conclusion about the best way to identify generic convictions . . ." *Shepard*, 544 U.S. at 20 (emphasis added). The majority opinion, in my view, completely abandons the pragmatic approach counseled by the Supreme Court, instead requiring that burglary charges against a defendant conform to the precise hypothetical examples in the Model Penal Code Commentaries. Before today, we consulted the Model Penal Code to provide guidance in ascertaining the generic definition of a crime, not as a mandate that we must strictly follow. *See, e.g.*, *United States v. Velasquez-Bosque*, 601 F.3d 955, 961 (9th Cir. 2010) (rejecting the Model Penal Code definition of generic extortion); *see also United States v. Esparza-Herrera*, 557 F.3d 1019, 1023 (9th Cir. 2009) ("The Model Penal Code serves as *an aid* in determining the offense's generic meaning.") (citation, alteration, and internal quotation marks omitted) (emphasis added). In *Taylor*, the Supreme Court stopped short of endorsing the Model Penal Code as binding. Instead, the Supreme Court advisedly explained that its definition of generic burglary "*approximates* that adopted by the drafters of the Model Penal Code[.]" *Taylor*, 495 U.S. at 598 n.8 (emphasis added). The Supreme Court concluded that a state court burglary conviction should be recognized if the defendant "is convicted of any crime, regardless of its exact defini-

tion or label, having the basic elements of unlawful or unprivileged entry into . . . a building or structure, with intent to commit a crime." *Id.* at 599. Supreme Court precedent, therefore, does not support the majority's "nuanced" approach to the modified categorical analysis.[3]

Indeed, the Court's opinion in *Taylor* eschews the majority's approach. It states that the elements of a burglary are "an unlawful or unprivileged entry into, *or remaining in*, a building or other structure with intent to commit a crime." *Taylor*, 495 U.S. at 599 (emphasis added). Inclusion of the words "or remaining in" signifies that the Supreme Court did not interpret the generic federal crime of burglary as necessarily requiring that the initial entry be unlawful or unprivileged. Any other reading of the Court's language renders "or remaining in" meaningless. We should adhere to the Supreme Court's articulation of the elements of the crime of burglary. *See United States v. Lindsey*, 634 F.3d 541, 548 (9th Cir. 2011) (holding that the Supreme Court's analytical approach on an issue is binding).

Instead, the majority's approach to the modified categorical analysis opens the floodgates to "nuanced" interpretations of various state defenses untethered from the basic elements of the generic crime, particularly as courts sift through state case law in search of aspects that may differ from the Model Penal Code hypotheticals. For example, California courts have ruled that no individual may be convicted of murder if he lacks the mental capacity to form the intent to kill. *See, e.g., People v.*

---

[3]The majority essentially concedes this point. *See Majority Opinion*, pp. 10623 n.22. It then seeks to blunt that concession by asserting that the words "unlawful or unprivileged" modify the "remaining in" language in *Taylor*, 495 U.S. at 599. *See id.* We agree. However, the majority's further assertion that this would allow for a burglary conviction based on a person's mere presence in a building fails to appreciate the error of treating affirmative defenses as elements of the generic crime, and its own recognition that California law does not require that a person's initial presence in a building be "unlawful or unprivileged." *Majority Opinion*, pp. 10623-27.

*Cortes*, 121 Cal.Rptr.3d 605, 633 (Cal. Ct. App. 2011). Are we now going to hold that if the indictment lacks any allegation regarding the mental capacity of a defendant, a murder conviction cannot be used to enhance a sentence? That is exactly where the majority opinion is leading the court, in the opposite direction from the Supreme Court's guidance.

Until today, we have consistently followed the modified categorical analysis articulated in *Taylor*. In *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 857 (9th Cir. 2005), *as amended*, the defendant "pled guilty to willfully and *unlawfully* entering a building with the intent to commit theft where the building was an inhabited dwelling house or other residential building within the meaning of Penal Code section 460." (citations, alterations, and internal quotation marks omitted) (emphasis in the original). Although succinct, our analysis mirrored that in *Taylor*, where the Supreme Court expressly and explicitly opined that conviction of "any crime . . . having the basic elements of unlawful or unprivileged entry into . . . a building" constitutes a conviction for burglary. 495 U.S. at 599. Because Rodriguez-Rodriguez pled guilty to unlawfully entering a residence, he admitted the elements of generic burglary. There was no need to engage in a metaphysical analysis of the nuances of California law that are more appropriate to the categorical module. *See Taylor*, 495 U.S. at 598-99 (noting the "problem" of applying *the categorical analysis* where the state statute "varies from the generic definition") (emphasis added); *see also United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995) ("Appellant's argument that the California statute encompasses consensual entries of non-residential structures is unavailing because the charging instrument to which he pleaded *nolo contendere* specified the unlawful entry of a residence.") (internal quotation marks omitted); *United States v. Smith*, 390 F.3d 661, 666 (9th Cir. 2004) (noting that the factual basis for defendant's plea established that he "unlawfully entered an inhabited dwelling," thereby "encompass[ing] the three elements of the *Taylor* definition of

generic burglary."); *Velasco-Medina*, 305 F.3d at 851-52 (same).

In *Aguilar-Turcios*, the author of the majority opinion forcefully and convincingly eschewed the "nuanced" approach he now advocates:

> The modified categorical analysis is concerned with determining whether the petitioner's *conviction* fits the generically defined crime, not whether the *elements* fit the defined crime. . . . Consider an example that has arisen repeatedly in our own jurisprudence. Suppose a defendant is charged with burglary, but the crime of conviction does not require one of the elements of the generic burglary crime: an unlawful entry. If the indictment, plea colloquy, or (in the event of a trial) jury instructions all make it clear that the defendant could not have been convicted of burglary *unless* the trier of fact concluded that the defendant entered unlawfully, the factfinder still necessarily found the requisite elements of the generic crime, and *Taylor* and *Shepard* are satisfied. . . . Here, the Court acknowledged that some crimes of conviction would lack elements of their generic counterparts. The Court held, nonetheless, that an offense constitutes the generic crime if the statutory definition substantially corresponds to the generic crime, or the charging paper and jury instructions actually required the jury to find all the elements of the generic crime. . . . The approach in *Li's*[4] concurrence is not so flexible. If a conviction is missing an element of the generic crime, a court can never look beyond the terms of the statute-even if the defendant specifically acknowledges that element in his plea. This approach completely removes certain crimes from consideration in the immigration context. For

---

[4]*Li v. Ashcroft*, 389 F.3d 892 (9th Cir. 2004).

example, in California, Idaho, and Nevada, burglary does not contain an unlawful entry requirement. Regardless of the contents of the indictment, jury instructions, plea colloquy, or stipulated facts, it is now impossible to remove an alien based on a prior burglary conviction in these states. . . . Although an alien can never be removed for a burglary that takes place in California, Idaho, or Nevada, aliens convicted of burglary in Alaska, Arizona, Hawaii, Oregon, Montana, and Washington, based on the same indictment, jury instructions, plea colloquy, or stipulated facts, face the possibility of removal because the statutes in these states contain an unlawful entry requirement. This is precisely the odd result that the Supreme Court sought to avoid in *Taylor*.

582 F.3d at 1103-05 (Bybee, J. dissenting) (citations and internal quotation marks omitted).

By rejecting the approach approved by the Supreme Court in favor of an absolute preclusion based on nuances in state law defenses, the majority opinion produces the same "odd results" decried by the Supreme Court. *Taylor*, 495 U.S. at 591 (citations omitted). The following can be readily discerned from the guilty plea to first degree residential burglary as charged in the Information, *see* Excerpts of Record, Vol. I, 25: (1) Guillermo Aguila-Montes de Oca (Aguila-Montes) committed residential burglary; (2) he "willfully and unlawfully enter[ed] an inhabited dwelling house and trailer coach"; (3) he entered the portion of a building inhabited by someone else — Jacinto Pacilla; and (4) he intended to commit larceny, by "taking . . . another's property, with the intent to steal and carry it away." *People v. Gomez*, 43 Cal.4th 249, 254-55 (2008) (citation and footnote reference omitted). By pleading guilty to unlawfully entering a dwelling occupied by someone else, Aguila-Montes necessarily admitted that there was no licensed or privileged entry premised on a possessory interest or on the occupant's informed consent. *See People v. Hulder-*

*man*, 64 Cal.App.3d 375, 379 (1976) ("Evidence establishing a defendant entered a dwelling with the intent to commit larceny supports an inference he entered without consent."). Additionally, it can be surmised from the information that Aguila-Montes' guilty plea did not implicate the Model Penal Code's hypotheticals related to businesses open to the public, as his guilty plea was for residential burglary. The Information elucidated that Aguila-Montes "invade[d] a possessory right in the building and . . . [that he] had no right to be in the building." *Gill*, 159 Cal.App.4th at 159. Aguila, therefore, was "convicted of [a] crime . . . having the *basic* elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599 (emphasis added).

Relying on *People v. Sherow*, 123 Cal. Rptr. 3d 880 (Cal. Ct. App. 2011), Judge Berzon posits that unlawful entry is not an element of burglary under California law. *See Berzon Concurrence*, p. 10681-82 & n.27. We are puzzled by this assertion, as California law is expressly to the contrary. *See People v. Montoya*, 7 Cal.4th 1027, 1042 (1994) ("The crime of burglary consists of an act — *unlawful entry* — accompanied by the intent to commit grand or petit larceny or any felony.") (citation and footnote reference omitted) (emphasis added); *see also In re Matthew A.*, 165 Cal.App.4th 537, 540 (2008) ("Burglary involves the act of *unlawful entry* accompanied by the specific intent to commit grand or petit larceny or any felony.") (citations omitted) (emphasis added); *People v. Valencia*, 28 Cal.4th 1, 12 (2002) ("[B]urglary now entails only unlawful entry.") (citation omitted).

Indeed, in *Sherow* the California Court of Appeal did not exclude unlawful entry as an element of burglary. Rather, the court addressed whether the defendant's lack of consent was an affirmative defense. *See Sherow*, 2011 WL 2536447, at *8 ("Case law establishes that the lack of consent to enter the building at issue is not an element of burglary. Therefore, state law governs the issue of whether the defendant or the

prosecution has the burden of proof on the affirmative defense of consent to burglary. . .") (citations omitted). The court recognized that unlawful entry is indeed an element of burglary:

> According to statute, a person is guilty of burglary if he or she enters a building or other structure listed in the statute with intent to commit grand or petit larceny or any felony. Based on common law precedent, our Supreme Court has clarified the statutory element of entry by explaining that *the crime of burglary involves entry that invades a possessory right in a building, and must be committed by someone who has no right to be in the building.*

*Id.* at \*10 (citations and internal quotation marks omitted) (emphasis added). "On the premise that the type of entry involved in burglary is the invasion of a possessory right by someone who has no right to be in the building for illegal purposes, case law has developed the consent defense to burglary." *Id.* (citations omitted). The California Court of Appeal opined that:

> the defense arises out of the principle that the element of *entry* referred to in the burglary statute must invade a possessory right in a building and must be committed by a person who has no right to be in the building for the purpose of committing illegal acts. Indeed, as our Supreme Court has observed, lack of consent is material to burglary because it is material to the element of entry[.]

*Id.* (citation and alterations omitted) (emphasis in the original).

As explained in these cases, it is lack of consent that is not an element of burglary under California law. Because lack of consent is an affirmative defense rather than an element of the offense, the convoluted analysis regarding California's pur-

portedly nuanced definition of burglary is superfluous. After all, Aguila-Montes' guilty plea reflected that he was not asserting an affirmative defense premised on any form of consent, which was his burden to prove. *See id.* at 11 ("The consent defense therefore goes to the heart of a defendant's guilt or innocence of the crime of burglary. Accordingly, a defendant has the burden of proof to establish a reasonable doubt as to the facts underlying the defense."). Aguila-Montes waived all defenses, including the affirmative defense of consent, and pled guilty to the elements of generic burglary, period.

Judge Berzon accuses me of ignoring the breadth of "the California concept of unlawful . . ." *Concurring Opinion*, p. 10681. However, it is Judge Berzon who studiously ignores the difference between elements of an offense and affirmative defenses to those elements. Resort to a truism referencing the difference between a dog's tail and his leg can't salvage this flawed analysis. *See Concurring Opinion*, pp. 10681-82 n.27. Regardless of configuration, that dog won't hunt.[5]

Sadly, a survey of California cases reveals the substantial impact the majority opinion will have, as California law is replete with examples of Informations limited to allegations similar to those in this case. *See, e.g.*, *People v. Birks*, 19 Cal.4th 108, 118 n.8 (1998) ("Count 1 simply alleged that defendant 'did willfully and unlawfully enter a commercial building with intent to commit larceny and any felony.' ") (alteration omitted); *People v. Atkins*, 210 Cal.App.3d 47, 53 n.2 (1989) ("The amended information charged appellant with 'the crime of residential burglary' and further stated that he

---

[5]We note that the best authority Judge Berzon can summon for her argument is a "general" citation to a treatise. *See id.* In any event, review of the treatise section cited "generally" reinforces the dichotomy between the elements of burglary and potential affirmative defenses to those elements. *See* B.E. Witkin, 2 *Witkin Cal. Crim. Law Crimes* — Property § 123 (3d ed. 2010).

'did willfully and unlawfully enter an inhabited dwelling house and inhabited portion of a building occupied by Carol Jarvis.") (alterations omitted); *People v. Goodwin*, 202 Cal.App.3d 940, 945-46 (1988) ("Appellant was charged in the information with two counts of residential burglary, in violation of Penal Code section 459 in that as to both counts he did willfully and unlawfully enter an inhabited dwelling house and an inhabited portion of a building, which was an occupied residence, with an intent to commit larceny.") (alterations and internal quotation marks omitted); *People v. Colbert*, 198 Cal.App.3d 924, 927 (1988) ("[T]he information in the previous case alleg[ed] that . . . appellant had committed a burglary in that he did willfully and unlawfully enter the residence and building occupied by Anthony and Joann Rosso with the intent to commit larceny[.]") (internal quotation marks omitted); *People v. Deay*, 194 Cal.App.3d 280, 283 (1987) ("Defendant was charged in counts I and II of the information with Residential Burglary, in violation of Section 459 of the Penal Code, in that he unlawfully entered the inhabited dwelling and residence of each victim.") (alteration and internal quotation marks omitted); *People v. O'Bryan*, 37 Cal.3d 841, 843 (1985) ("The prosecution filed an information charging defendant with two counts of burglary. The first count asserted that . . . defendant did willfully and unlawfully enter the residence of Marie Paz Estrata, with the intent to commit larceny. The second count, in identical language, charged an entry into the residence of Teresa Colleen Strom.") (alterations and internal quotation marks omitted); *Hulderman*, 64 Cal.App.3d at 379 ("Defendant was charged with burglary in that he did wilfully and unlawfully enter a residence and trailer coach occupied by Georgia Ellen Pettit with the intent to commit larceny.") (internal quotation marks omitted); *People v. Tatem*, 62 Cal.App.3d 655, 657 (1976) ("Except for the dates and the names of the business establishments alleged to have been entered, all five counts of the information charged burglary in identical language. Count One of the information read: On or about 3/31/75 Carl Maxwell Tatem did unlawfully enter a building, Snyder's Bakery,

with intent to commit theft, in violation of Penal Code section 459.") (internal quotation marks omitted).[6] Given the manner in which California Informations are drafted, very few, if any, would distinguish whether the entry was "unlawful" under California criminal law or "unlawful or unprivileged in the generic sense," as defined by the majority opinion's interpretation of nuances [affirmative defenses] applied to the California burglary statute. *Majority Opinion*, pp. 10631-33.

In sum, importing *Navarro-Lopez's* rejected missing element rule into the modified categorical analysis, as the majority opinion would essentially do, ignores the Supreme Court's approach to the modified categorical approach as articulated in *Taylor*, and completely thwarts the intent of Congress that burglary be included as a predicate offense. *See Taylor*, 495 U.S. at 588. For those reasons, I respectfully dissent from that portion of the majority opinion.

---

[6]Although these California cases contain a multitude of additional facts that may or may not lend themselves to application of the modified categorical approach, they exemplify the consistent language utilized in California Informations to charge burglary. Indeed, there is nothing anomalous about California's practice, as the purpose of a charging document is to inform the defendant of the crimes he is alleged to have committed, not to anticipate and list any potential defenses. *See People v. Arevalo-Iraheta*, 193 Cal.App.4th 1574, 1581 (2011).